THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, *v.* SCHIEBEL,
APPELLEE AND CROSS-APPELLANT.

[Cite as State v. Schiebel (1990), 55 Ohio St. 3d 71.]

(Nos. 89-583 and 90-85—Submitted June 6, 1990—Decided October 26, 1990.)

---

[1] Together with Marvin L. Warner and Burton Bongard, defendant was indicted and tried in connection with the financial collapse of the Home State Savings Bank. Reference to Schiebel's codefendants throughout this opinion is necessary in understanding and resolving the issues on appeal here. For a history of the transactions leading to the indictment, see the companion case *State* v. *Warner* (1990), 55 Ohio St. 3d 31, 564 N.E. 2d 54.

72

---

[2] As amended, the indictment charged Schiebel with forty-two counts of misapplication of funds (odd numbered counts one to eighty-one and eighty-eight) and forty-one counts of unauthorized acts (even numbered counts two to eighty-two) in violation of R.C. 1153.01: In five counts, eighty-three to eighty-seven, he was charged with violations of securities law pursuant to R.C. 1707.44(B)(4), (D), (F), (G), and 1708.05. Count eighty-eight was related to the merger of Home State with its parent company.

*Lawrence A. Kane, Jr.*, special prosecutor, *Mark A. Vander Laan, Carl J. Stich, Jr., Kenneth S. Resnick, Paul R. Mattingly* and *M. Gabrielle Hils*, for appellant and cross-appellee.

*Coolidge, Wall, Womsley & Lombard Co., L.P.A., Roger J. Makley* and *Janice M. Paulus*, for appellee and cross-appellant.

MOYER, C.J. Because defendants were tried together, many of the issues presented on appeal by the state and on cross-appeal by the defendants are intertwined. To avoid duplication, we therefore resolve issues common to both defendants in either the instant case or *State* v. *Warner* (1990), 55 Ohio St. 3d 31, 564 N.E. 2d 54.

89-583

The Motion for New Trial

Immediately after the verdict was rendered on March 2, 1987, and before sentencing on March 30, some of Marvin Warner's attorneys began interviewing jurors in anticipation of litigation in federal court. Attorneys Josephine P. Warner, William H. Jeffress, Jr., and R. Stan Mortenson interviewed jurors Herman Cooper, John Brady, Rita Lafkas, Elmer Mathas, Helen Moore and Albert Stuck. During the first interviews it appears none of the jurors made any statements tending to impeach the verdict, nor did counsel inquire about possible juror misconduct.

However, on April 9, 1987, juror Lafkas signed an affidavit averring that juror Larry Dalton told her that Dalton's mother-in-law had a deposit in Home State, and that Dalton had stated that he "hated" Marvin Warner.

On April 20 and 23, 1987, forty-nine and fifty-two days after the jury

verdict, Warner and Schiebel, respectively, moved for leave to file a motion for new trial based on Dalton's alleged "misconduct." In his motion, Schiebel argued that the alleged juror misconduct qualified as newly discovered evidence within the meaning of Crim. R. 33(B). In response, the state moved to strike the juror affidavits as incompetent under Evid. R. 606(B), and because the motions were untimely filed.

On January 14, 1988, the trial court conducted a hearing in *State* v. *Warner*, in which jurors Brady and Lafkas and attorneys Mortenson, Warner and Jeffress testified. At Schiebel's request, his motion was decided on the basis of the hearing on Warner's motion. Juror Brady testified that he had not been asked about juror misconduct when interviewed by the attorneys immediately after trial. Attorney Mortenson testified that he informed attorney Josephine Warner that there should be a follow-up interview of juror Brady, but Josephine Warner did not contact Brady until March 28, two days before sentencing—more than twenty-five days after the verdict. The trial court overruled both defendants' motions for leave to file motion for new trial.

The court of appeals reversed the trial court's denial of the motions for leave to file motion for new trial, holding that Warner and Schiebel had shown by clear and convincing evidence that they were unavoidably prevented from timely filing their motions for new trial.

Crim. R. 33(B) provides that a motion for new trial, other than upon the ground of newly discovered evidence, must be filed within fourteen days after the verdict was rendered "* * * unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial * * *." The court of appeals stated that a motion for new trial based on juror misconduct is different from one based on newly discovered evidence.

Warner's and Schiebel's motions for new trial relating to juror misconduct raise two issues for consideration. The first is whether defendants showed by clear and convincing evidence that they were unavoidably prevented from discovering the juror misconduct.

The standard of "clear and convincing evidence" is defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross* v. *Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E. 2d 118, paragraph three of the syllabus; *In re Adoption of Holcomb* (1985), 18 Ohio St. 3d 361, 368, 18 OBR 419, 425, 481 N.E. 2d 613, 620.

Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. *Ford* v. *Osborne* (1887), 45 Ohio St. 1, 12 N.E. 526, paragraph two of the syllabus. However, it is also firmly established that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court. An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court judge. See *Seasons Coal Co.* v. *Cleveland*

(1984), 10 Ohio St. 3d 77, 80, 10 OBR 408, 411, 461 N.E. 2d 1273, 1276; *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578.

Warner's attorneys interviewed several jurors immediately after the verdict was rendered, but, it appears, failed to inquire as to possible misconduct. Although Warner's attorneys sought to gain the jurors' impressions of the case, they did not question jurors about other jurors' conduct or the deliberations. It cannot be said with any degree of probability, let alone conclusively, that Warner was unavoidably prevented from discovering any alleged misconduct before the fourteen-day period elapsed since none of his attorneys asked about juror misconduct, outside influence, tampering or other improper conduct which could have been identified and proved by means of outside sources. Until juror Lafkas volunteered a statement to attorney Warner about juror Dalton, defendants had made no attempt to ascertain any misconduct. Juror Brady stated that he was prepared to mention the matter to Warner's attorneys, but did not because he was not questioned on the matter.

If such is the case with Warner, Schiebel has the more difficult case in showing by clear and convincing evidence that he was unavoidably prevented from discovering any juror misconduct. Schiebel's attorney made no attempt to interview the jurors. His motions for leave to file motion for new trial and for new trial based on juror misconduct were filed after Warner filed his motions, and were based purely on the efforts of Warner's attorneys, not his own. It cannot be said that Schiebel was unavoidably prevented from discovering an incident of juror misconduct when he made no attempt toward such discovery.

The second, and more fundamental issue, stems from the rule on evidence *aliunde* recognized in Ohio. Evid. R. 606(B) governs the competency of a juror to testify at a subsequent proceeding concerning the original verdict. The first sentence of Evid. R. 606(B) embodies the common-law tradition of protecting and preserving the integrity of jury deliberations by declaring jurors generally incompetent to testify as to any matter directly pertinent to, and purely internal to, the emotional or mental processes of the jury's deliberations. The rule is designed to protect the finality of verdicts and to ensure that jurors are insulated from harassment by defeated parties. See *State* v. *Adams* (1943), 141 Ohio St. 423, 25 O.O. 570, 48 N.E. 2d 861.

In order to permit juror testimony to impeach the verdict, a foundation of extraneous, independent evidence must first be established. This foundation must consist of information from sources other than the jurors themselves, *Wicker* v. *Cleveland* (1948), 150 Ohio St. 434, 38 O.O. 299, 83 N.E. 2d 56, and the information must be from a source which possesses firsthand knowledge of the improper conduct. One juror's affidavit alleging misconduct of another juror may not be considered without evidence *aliunde* being introduced first. See *Diehl* v. *Wilmot Castle Co.* (1971), 26 Ohio St. 2d 249, 55 O.O. 2d 484, 271 N.E. 2d 261; *Lund* v. *Kline* (1938), 133 Ohio St. 317, 10 O.O. 411, 13 N.E. 2d 575; *Kent* v. *State* (1884), 42 Ohio St. 426, paragraph four of the syllabus. Similarly, where an attorney is told by a juror about another juror's possible misconduct, the attorney's testimony is incompetent and may not be received for the purposes of impeaching the verdict or for laying

a foundation of evidence *aliunde.* See *Tasin* v. *SIFCO Industries, Inc.* (1990), 50 Ohio St. 3d 102, 553 N.E. 2d 257; *Dodd* v. *McCammon* (1920), 14 Ohio App. 160, 32 Ohio C.C.(N.S.) 68.

The evidence of juror misconduct in this case is derived strictly from juror affidavits. During pretrial voir dire, Larry Dalton stated that he did not know anyone with deposits at Home State. After trial, and before the January 1988 hearing, Dalton executed an affidavit in which he admitted that sometime during the trial his mother-in-law had briefly mentioned that she had had money in Home State in the past, but did not have any money there at the time of the collapse. He stated that at no time during his service as a juror had he known when she had money in Home State, or the amount. He stated that he had made statements to jurors Lafkas and Brady. However, he averred that his mother-in-law's statements had had no effect on his duties as a juror, and that he had had an open mind at all times, had been fair and impartial, and had considered only the evidence presented by the parties. Dalton stated that he had enjoyed "needling and kidding" Rita Lafkas and had said that he "hated" Marvin Warner in order to get a "rise out of her," but that this had had nothing to do with his deliberations.

Upon later investigation, it was learned that Dalton's mother-in-law, Sara B. Horton, had opened an account at Home State in February 1984. She had an active checking account until she withdrew a balance of $52.28 in December 1984, several months before Home State collapsed. Because it was an interest-bearing account, there remained twenty cents in accrued interest which was finally withdrawn to close her account on August 22, 1985, approximately three months after Home State collapsed. Mrs. Horton did not lose her money, and there was no indication that she was "injured" by the collapse or felt any animosity toward Home State or the defendants.

This was the evidence before the trial court when it denied the motions for leave to file motion for new trial. First, the motions were clearly filed outside the fourteen-day requirement of Crim. R. 33(B). The term "newly discovered evidence," as used in that rule, does not refer to evidence of juror misconduct. Second, based on the evidentiary hearing, the court found that the parties had not shown by clear and convincing evidence that they had been "unavoidably prevented" from discovering the alleged juror misconduct. See Crim. R. 33(B). Third, the evidence presented by the defendants was by affidavit of jurors which was internal to their deliberations, would have impeached the verdict, and yet was not supported by extrinsic, independent evidence by outside sources. This was a violation of the *aliunde* rule incorporated in Evid. R. 606(B).

Confronted with these facts, the trial court, even had it granted leave to file a late motion, could have reasonably determined that the alleged juror misconduct did not result in bias and prejudice to the defendants, and did not necessitate a new trial. Motions for new trial pursuant to Crim. R. 33(B) are addressed to the sound discretion of the trial court, see *State* v. *Williams* (1975), 43 Ohio St. 2d 88, 72 O.O. 2d 49, 330 N.E. 2d 891, and will not be disturbed on appeal absent an abuse of discretion. See, generally, *State, ex. rel. Crosby,* v. *Ohio Dept. of Mental Retardation & Developmental Disabilities* (1988), 38 Ohio St. 3d 179, 527 N.E. 2d 812.

The court of appeals erred in substituting its judgment for that of

the trial court. The judgment of the court of appeals is reversed.

90-85

### The Appeal on the Merits

We will first address the state's appeal, then consider defendant's cross-appeal.

### I

### Juror Disqualification

The issue raised in the state's and Schiebel's first propositions of law is whether every potential juror should have been disqualified who had an account in any savings and loan institution that was temporarily closed by the Governor after the collapse of Home State.

The trial court excluded prospective jurors who themselves had or whose relatives had deposits in Home State when it was closed.

However, the trial court ruled that persons who had an account in a savings and loan institution that was temporarily closed by the Governor as a result of the Home State collapse were not victims of the collapse in the same way that Home State depositors were and that they could serve as jurors. As a result, defendant claims he was prejudicially forced to use peremptory challenges to excuse such jurors.

Juror Beth H. Statt had deposits at Mt. Healthy Savings & Loan and was challenged for cause by defendants Warner and Schiebel. The defendants had exhausted their peremptory challenges by then and Statt became the twelfth juror. Of the prospective jurors that Schiebel challenged on this ground, only Statt became a juror.[3]

During voir dire, Statt said that she had approximately $2,000 deposited with Mt. Healthy Savings & Loan when Governor Celeste ordered all state-chartered savings and loan institutions temporarily closed to prevent the public from withdrawing all funds on deposit. Statt was unable to withdraw her funds for three or four weeks. During that time, some checks issued to her creditors were returned unpaid. As a result of the closure, she cashed her paychecks at a bank close to her home.

During questioning she was asked the following:

"Q: Do you feel, as a result of that, you have any preconceived notions about the guilt or innocence of these defendants?

"A: No. The way I look at it is Celeste was trying to do something to prevent all the savings and loans from having repercussions, so, by my not being able to get to any money for that time it did not create personal hardship. I still had my paychecks that I would take to another bank, so I was not personally affected.

"Q: So you don't feel any animosity or feel any preconceived notions of the guilt or innocence of these defendants because of anything that happened to you as a result of the Home State collapse?

"A: I feel it was unfortunate, but,

---

[3] A number of prospective jurors were challenged for cause on the basis of the Governor's order temporarily closing savings and loan institutions as a result of the Home State collapse. However, defendants Warner and Schiebel were forced to peremptorily exclude only one of those jurors, prospective juror Iles, who was ex-cluded by Warner. A review of Iles' voir dire reveals that, like juror Statt, he suffered little if any harm from the Governor's order. Therefore, since we find that the denial of the challenge for cause was not error regarding Statt, it was likewise not error regarding prospective juror Iles.

you know, these kind of things happen sometimes.

"Q: * * * is there anything you want to tell us that you know of that would keep you from being a fair and impartial juror in this case?

"A: I don't think so."

Statt said that most of the places where she did business did not penalize her for returned checks, nor did her bank charge for the returned checks. In response to further questioning, she responded that she did not feel victimized by the Home State collapse, that she had no preconceived notions as to the guilt of the three defendants, and that she could be a fair and impartial juror and judge defendants according to the law as the court would instruct her.

"[Warner's counsel]: If you were firmly convinced, in your own mind, or if you felt that the prosecution had failed to prove beyond a reasonable doubt any one of those 88 counts, you would not yield your judgment on that simply for the sake of compromise, would you?

"A: No, I don't think it's right that somebody is punished if they are not guilty."

The court of appeals sustained defendants' assignments of error on this point, holding that notwithstanding Statt's protestations of impartiality, she had suffered a direct and immediate economic deprivation which she perceived to be attributable to the collapse of Home State.

This proposition of law presents the question of whether juror Statt should have been excluded for cause pursuant to Crim. R. 24(B)(11) as a "person alleged to be injured or attempted to be injured by the offense charged * * *." Schiebel contends that Statt was "injured" by the collapse of Home State because of the Governor's resulting order freezing her savings and loan account. The state, however, contends that Statt was not "injured" and in any event was not subject to automatic disqualification given her clear lack of bias.

A trial court's ruling on a challenge for cause will not be disturbed on appeal unless it is manifestly arbitrary and unsupported by substantial testimony so as to constitute an abuse of discretion. See *State* v. *Wilson* (1972), 29 Ohio St. 2d 203, 211, 58 O.O. 2d 409, 414, 280 N.E. 2d 915, 920-921.

The trial court in our view correctly rejected the defendants' overbroad contention that all depositors whose accounts were frozen were "injured." The hardship resulting to depositors could only be determined by assessing their individual circumstances. No *per se* rule could be applied in this case.

In assessing juror Statt's circumstances, we find that she suffered little if any harm from the collapse of Home State. She said she "had no need to get out a large amount of money." Although some of her checks were not honored because her account was frozen, Statt said that she was for the most part not penalized. Statt did not indicate the extent to which she was penalized for any dishonored checks. Finally, as indicated above, Statt said, "I still had my paychecks that I would take to another bank, so I was not personally affected." "Injury" connotes something more than mere inconvenience or concern. We find under these circumstances that the trial court did not abuse its discretion in refusing to excuse juror Statt for cause under Crim. R. 24(B)(11). We therefore reverse the court of appeals on this issue.

## II

Issues Relating to Jury Instructions

The state's second, third and

fourth propositions of law and Schiebel's second, third, fourth and ninth propositions of law are based on the following facts.

The trial court instructed the jury in open court on Friday afternoon, February 20, 1987. Defendants' request for a copy of the written jury charges had been denied. Before sending the jury to begin deliberations, the trial court held a conference in chambers to hear objections or requests from counsel. Schiebel joined Warner in requesting an instruction on the "duty to disclose" in connection with the securities counts and an instruction on the "good faith" defense. Bongard requested an instruction on the power of savings and loans to invest under R.C. 1151.34, and the prosecution requested an instruction on motive in connection with the charges of unauthorized acts.

The trial court orally gave the jury these four supplemental instructions. The jury then retired to begin deliberations, and was given the court's written instructions in a black loose-leaf binder. The jury returned Saturday morning (February 21, 1987) to continue its deliberations. These events are not disputed by the parties.

However, events of Saturday morning gave rise to the prosecution's motion to correct the record filed in April 1989. Both parties submitted affidavits and memoranda in an attempt to recreate those events. From these affidavits and the transcript of the proceedings, we ascertain the following.

Warner's attorneys, Jeffress and Miller, met with assistant special prosecutor Elleman in the trial judge's chambers to determine the status of the jury instructions. Neither Schiebel nor his attorneys were present. After discussion and agreement, Miller gave Brenda Sellmeyer, one of the court reporters, three or four typed pages represented as being the supplemental instructions given orally to the jury on Friday afternoon. She retyped the pages as instructed. Those instructions were given to the trial judge, who instructed Constable Donnellon to give them to the jury. Donnellon averred that he went to the jury room with approximately three or four typed pages of instructions. The jury was assembled but on break. Donnellon averred that he "stated to the jurors as a group that there were some additional jury instructions for them to consider along with the ones which were in the binder which had been given to them the afternoon before." He averred that he then placed the instructions on the table and left the room.

After the jury delivered its verdicts on March 2, 1987, Sellmeyer and two other members of the court staff entered the jury room to gather the exhibits. According to Sellmeyer's affidavit, the room was chaotic as members of the press were already there "fishing through boxes and waste paper baskets." Court staff placed the exhibits on a cart, but on the way to the clerk's office the cart tipped over when it caught on a television camera cord.

After sentencing on March 30, Warner's attorneys obtained copies of the jury instructions from the binder, and evidently shared them with Schiebel's attorneys. The four supplemental instructions were not in the binder.

The absence of these written supplemental jury instructions from the original appellate record was the premise for assignments of error in the court of appeals by defendants.

The state then filed motions to correct the record in the trial court requesting that the four supplemental instructions be added to the appellate

record. The defense presented affidavits from two jurors, each attesting that he did not remember Donnellon bringing additional jury instructions into the room, and stating that he did not consider any instructions outside those contained in the binder. Jeffress filed an affidavit averring that he had spoken with three other jurors who also had no recollection of additional jury instructions.

Elleman filed an affidavit stating that on review of his papers from the trial, he found "copies of several typed instructions[,] the originals of which * * * [he] believe[d] were among those delivered to the jury" on Saturday morning. One concerned the good faith defense, one concerned motive, and the third concerned the power of savings and loan associations to invest funds. Sellmeyer, the court reporter, averred that these three instructions looked like ones she had typed on Saturday morning. However, she stated that these supplemental instructions, which had been stored on computer disk, had since been erased, and no one claims to have seen them thereafter, except the copies that Elleman averred that he had found. The instruction regarding the duty to disclose was not among those found by Elleman.

The state's motions to correct the record were considered separately as to each defendant. On May 26, 1989, Judge Ruehlman granted the motion to correct the record in the Warner case, based on the "memoranda, affidavits and argument of counsel." Judge Niehaus, the original trial judge, conducted a hearing on June 15, 1989 to consider the state's motion in the Schiebel case. During the hearing, Judge Niehaus stated that he had been under the impression that Jeffress and Miller had been representing all defendants on that Saturday morning, that

he had understood Donnellon would place the additional instructions in the binder, and that these instructions should be part of the record. The trial court granted the motion to correct the record. Its orders stated that "the jury instructions presented orally by the trial court after the chambers conference on February 20, 1987 * * * [the Friday afternoon] were delivered in writing to the jury the following day."

On June 13 and 19, 1989, the court of appeals granted defendants' motions to file two supplemental assignments of error challenging the trial court's order correcting and certifying the additional record.

Among the matters raised, both defendants contended that the variations between the written charge in the binder and the oral charge were prejudicial in that the written charge did not include instructions presented orally on the good faith defense and the duty to disclose, which they asserted were critical to their defense on the counts of the indictment charging securities law violations.

Defendants also complained that the trial court erred in refusing to provide them with copies of the written jury instructions, and that the constable's *ex parte* communications in delivering the supplemental instructions violated their right to a fair trial. Schiebel contended that his absence on Saturday morning when the jury was given the supplemental instructions deprived him of his constitutional right to be present during all proceedings.

In considering defendants' appeal on the merits that there were variations between the oral and written instructions along with the supplemental assignments of error, the court of appeals held: (1) that the trial court abused its discretion in granting the state's motion to correct the record to

include instructions on motive, power to invest and good faith without conducting an evidentiary hearing (treated in Part II[A], *infra*); (2) that affidavits of jurors were admissible for determining the motion to correct the record (discussed in Part II[B], *infra*); (3) that the defense raised a presumption of prejudice that the constable's *ex parte* communication with the jury when he delivered the instructions was prejudicial, which was not rebutted by the state (discussed in Part II[C], *infra*); (4) that Warner and Schiebel were prejudiced by the absence from the written charge of the instruction on the duty to disclose (treated in Part II[D], *infra*); (5) that the trial court did not err in refusing to provide defendants with copies of the written jury instructions prior to submission of the case to the jury (treated in Part II[E], *infra*); and (6) that delivery of the supplemental written instructions to the jury without the presence of Schiebel or his counsel violated Schiebel's right to be present at every stage of the proceedings pursuant to Crim. R. 43(A) (treated in Part IV, *infra*). The court stated, however, that a comparison of the oral charges on motive, power to invest and good faith did not vary materially from the written versions provided by Elleman in his affidavit. We will dispose of each holding separately.

## A

### Correction of the Record

App. R. 9(E) provides the conditions under which a trial court record may be corrected: "If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals."

Two things are clear from the rule. The first is that either the trial court or the court of appeals may order that a record be corrected and supplemented. The second is that where a party seeks to have the record corrected, it is within the province of the trial court to resolve disputes about the record on appeal.

A trial court's authority under App. R. 9 in resolving disputes about the record is well stated in *Joiner* v. *Illuminating Co.* (1978), 55 Ohio App. 2d 187, 195-196, 9 O.O. 3d 340, 345, 380 N.E. 2d 361, 366:

"Appellate Rules 9(C), (D), and (E) clearly state that if there are any objections, proposed amendments, or disagreements as to the proper contents of the statement of evidence or proceedings, of an agreed statement, or of the record as usually constituted under App. R. 9(A), these differences shall be submitted to and settled by the court. * * *

"The terms 'approval' and 'conforms to the truth' as employed by Appellate Rules 9(C), (D), and (E), mean that the trial court must first determine the accuracy and truthfulness of a proposed statement of the evidence or proceedings or an agreed statement and then approve it and sign it. This gives the trial judge the responsibility, duty, and authority to delete, add, or

otherwise modify portions of a proposed statement so that it will conform to the truth and be accurate before he approves it."

A court of appeals can authorize correction or supplementation of the trial court's record when the accuracy of proposed changes is undisputed, *In re Estate of Reeck* (1986), 21 Ohio St. 3d 126, 21 OBR 429, 488 N.E. 2d 195, but the court of appeals cannot resolve disputes about the trial court's record in the course of an appeal. *Associated Estates Corp.* v. *Fellows* (1983), 11 Ohio App. 3d 112, 114, 11 OBR 166, 168, 463 N.E. 2d 417, 420.

Here, the court of appeals found a conflict in the evidence presented by the parties on the motion to correct the record. Such a conflict is for the trial court to resolve in its sound discretion. Where a trial court receives and evaluates conflicting evidence regarding the state of the record, the decision *to correct or supplement the record* pursuant to App. R. 9(E) rests upon the court's ability to weigh the evidence. Where it is supported by competent, reliable evidence, such ruling will not be reversed by a reviewing court absent an abuse of discretion. See *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 16 O.O. 3d 169, 404 N.E. 2d 144.

Here the prosecution presented affidavits from court personnel to the effect that three or four supplemental instructions given orally on Friday afternoon were typed and delivered to the jury on Saturday morning. The defense presented affidavits from two jurors to the effect that they did not remember receiving additional instructions on Saturday morning, nor did they consider supplemental written instructions in their deliberations.

The issue here is not whether the jurors considered the supplemental instructions during their deliberations in reaching a verdict, but whether there was sufficient evidence presented to support the trial court's decision that those instructions were delivered. We believe there is.

Two of Warner's attorneys were present on Saturday morning with one assistant special prosecutor and the trial judge. The record indicates that they went there specifically for the purpose of causing the additional instructions to be reduced to writing and delivered to the jury. In granting the state's motions to correct the record, the trial judges considered all the affidavits, memoranda and arguments of counsel. The trial judge who conducted the trial also conducted the hearing on the state's motion to correct the record in defendant Schiebel's case. There is nothing in the affidavits to directly contradict that the judge handed the instructions to the constable, who, in turn, placed them on the table in the jury deliberation room.

The court of appeals' opinion is somewhat confusing on these issues. In one instance, it concludes that the defendant was prejudiced when the constable delivered supplemental instructions to the jury; in another instance, the court held that there was no substantial difference between the oral and written versions of three of the four additional instructions; and, in yet another instance, held that it was an abuse of discretion for the trial court to correct the record as to these instructions without an evidentiary hearing. The trial court had sufficient information before it to consider the state's motion. Even assuming a hearing is required by rule or statute, which it is not, it is difficult to imagine what additional "evidence" the court of appeals would have the trial court receive other than that presented as a result of the state's motion.

A fundamental tenet of judicial

review in Ohio is that cases should be decided on their merits. App. R. 9(E) is to be construed liberally to give effect to this principle. *In re Estate of Reeck, supra*, at 127, 21 OBR at 430, 488 N.E. 2d at 196; *Reichert* v. *Ingersoll* (1985), 18 Ohio St. 3d 220, 222, 18 OBR 281, 282-283, 480 N.E. 2d 802, 804-805. Cf. *DeHart* v. *Aetna Life Ins. Co.* (1982), 69 Ohio St. 2d 189, 192, 23 O.O. 3d 210, 212, 431 N.E. 2d 644, 646. We therefore reverse the court of appeals and uphold the trial court's order correcting the record. We will consider this appeal, therefore, on the assumption that all four disputed supplemental instructions were reduced to writing and given to the jury.

## B

### Juror Affidavits

In reaching its conclusion that the trial court erred in correcting the record, the court of appeals held that the juror affidavits regarding the supplemental instructions and communication by the court constable were admissible. The admissibility of the juror affidavits presents a problem similar to the one regarding other affidavits offered by the defense in support of its motions for a new trial based on juror misconduct. See the discussion above for case No. 89-583. We have already stated that Evid. R. 606(B) precludes a juror from testifying as to any matter occurring during the course of deliberations or as to the effect of anything upon his or any other juror's mind "or concerning his mental processes in connection therewith." In *Long* v. *Cassiero* (1922), 105 Ohio St. 123, 136 N.E. 888, paragraph one of the syllabus, this court held that a juror cannot impeach his signed verdict by an affidavit that the verdict was rendered through a misunderstanding of the charge. Affidavits of jurors,

stating that they misunderstood the charge of the court, will not be received on motion to set aside the verdict. " 'If a juror's affidavit, stating his idea of the law as the judge had expounded it, or the facts as he understood the witnesses, were to be held sufficient to set aside a verdict, provided it should turn out that he was mistaken in any particular, scarcely any verdict could stand [,]' " *id.* at 127, 136 N.E. at 889, and "[i]f the erroneous verdict was brought about by the charge of the court, error should be predicated, not upon affidavits that the jury misunderstood the charge, but upon the ground that the charge was so misleading and prejudicial as to induce the erroneous verdict." *Id.* at 128, 136 N.E. at 889; *Cleveland Elec. Illum. Co.* v. *Astorhurst Land Co.* (1985), 18 Ohio St. 3d 268, 274, 18 OBR 322, 327, 480 N.E. 2d 794, 800. That error exists in the instructions is, of course, part of defendants' argument, and we will address it separately.

Defendants argue that the two juror affidavits should be admissible to decide whether to supplement the record since a portion of their argument is that the four supplemental instructions were essential to the defense of the case, and therefore the jury's failure to "receive" or "consider" the instructions was prejudicial. Nevertheless, any error in these instructions must be established on their content, not on whether the jurors considered them during deliberations. To this extent the affidavits would be inadmissible.

We also observe that the affidavit submitted by Warner's attorney regarding his conversations with other members of the jury is hearsay under Evid. R. 801(C), and is inadmissible under Evid. R. 802. *Tasin* v. *SIFCO Industries, Inc., supra*, at 107, 553 N.E. 2d at 262.

However, those same jurors' affidavits were admissible in support of an allegation that improper *ex parte* communication occurred between a member of the court staff and the jury. *Emmert* v. *State* (1933), 127 Ohio St. 235, 187 N.E. 862, syllabus; *State* v. *Adams, supra,* paragraph one of the syllabus. These cases balance the public policy of the *aliunde* rule and the requirements of R.C. 2945.33 (then G.C. 13448-1), which provides that an officer charged with the care of a deliberating jury "shall not permit a communication to be made to them, nor make any himself * * *." Such a communication is precluded by statute and falls within an exception to the *aliunde* rule incorporated in Evid. R. 606(B), that "* * * [a] juror may testify without the presentation of any outside evidence concerning * * * any improprieties of any officer of the court. * * *"

The court of appeals erred to the extent it ruled that the juror affidavits were admissible in determining whether the trial court abused its discretion in correcting the record. We hold that the court of appeals erred in holding that the record should not have been corrected.

## C

*Ex Parte* Communication by Constable

We next consider the court of appeals' conclusion that the defendant is presumed to be prejudiced by the constable's communication with jurors when he delivered the additional instructions to them.

As a general rule, any communication with the jury outside the presence of the defendant or parties to a case by either the judge or court personnel is error which may warrant the ordering of a new trial. *Rushen* v. *Spain* (1983), 464 U.S. 114; *Remmer* v. *United States* (1954), 347 U.S. 227; *Bostic* v. *Connor*

(1988), 37 Ohio St. 3d 144, 149, 524 N.E. 2d 881, 886; *State* v. *Abrams* (1974), 39 Ohio St. 2d 53, 68 O.O. 2d 30, 313 N.E. 2d 823. Such private communication outside the presence of the defendant does not, however, create a conclusive presumption of prejudice. *Remmer* v. *United States, supra,* at 229; *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 236-237, 15 OBR 311, 373-374, 473 N.E. 2d 264, 324-325. The communication must have been of a substantive nature and in some way prejudicial to the party complaining. In this case, the constable averred that he entered the jury room and stated "that there were some additional jury instructions for them to consider along with the ones in the binder which had been given to them the afternoon before." He averred that he placed the instructions on the table and left.

This is not the proper method for delivering supplemental instructions to a jury. However, the determinative question is whether the constable's conduct prejudiced the jurors against the defendant. It is apparent from the affidavits filed by defendant to prove that the instructions never were delivered that some of the members of the jury did not recall any communication by the constable regarding additional instructions. We note that Warner's attorneys, who were present, apparently saw no prejudice in allowing the supplemental written instructions to be delivered in this manner, as there is no indication that they objected to the procedure. We perceive no prejudice to Schiebel in the constable's delivery of the instructions to the jury with the comment that they were to consider them along with the other written instructions. If prejudice is to be found, it must be found in the instructions themselves, not in the constable's comments, which were innocuous.

We conclude that the constable's

communication with the jury, although improper, was not prejudicial to the defendant, and was harmless beyond a reasonable doubt.

### D

### Jury Instruction on the Duty to Disclose

In the state's third proposition of law, and Schiebel's third proposition of law, the issue presented is whether defendant, as charged in this indictment, was entitled to a jury instruction on the duty to disclose. The court of appeals reversed defendant's convictions on counts eighty-three, eighty-five and eighty-six for violation of securities laws pursuant to R.C. 1707.44(B)(4), 1707.44(J) and 1707.44(G), partly on the basis that the trial court's failure to instruct the jury concerning the duty to disclose constituted reversible error.

We addressed this same issue in *State* v. *Warner, supra*, at Part IV. For the reasons stated therein, we hold that giving this instruction was erroneous under the circumstances of this case, and that any alleged failure to reduce the instruction to writing would therefore have been harmless to defendants. We therefore reverse the court of appeals.

### E

### Failure to Provide Counsel with Written Instructions

Although this issue is presented in the cross-appeal, we address it here in the interest of clarity. In his ninth proposition of law, Schiebel states: "When the trial court provides a written charge to the jury in a criminal case, denial of the defendant's request to inspect the written charge before the jury retires constitutes reversible error and violates the defendant's federal and state constitutional rights to a fair trial, right to be present and right to counsel." Codefendant Warner asserts a similar principle in his ninth proposition of law.

In rejecting these claims, the court of appeals relied on *State* v. *Gerhardt* (1961), 115 Ohio App. 83, 184 N.E. 2d 516. The *Gerhardt* court stated that "[t]he purpose of Section 2945.10(G) is to provide for a written charge to be presented to the jury for their use in arriving at a verdict and not for the convenience of counsel." Because *Gerhardt* concerns only statutory rights under R.C. 2945.10(G), it cannot be relied on to dispose of claims under the Criminal Rules and the federal and state Constitutions.

We conclude that Schiebel should have been allowed the opportunity to inspect the written instructions that were taken into the jury room. Crim. R. 30(A) states that "[a] party may not assign as error the giving or the failure to give any instructions unless he objects thereto before the jury retires to consider its verdict * * *." Schiebel could not object to any discrepancies in the written instructions unless he was given the opportunity to inspect those instructions.

More fundamentally, Schiebel had the right to be present at all critical stages of his trial under constitutional and Criminal Rule provisions. *Rushen* v. *Spain, supra*, at 117; Crim. R. 43(A). A criminal defendant has a right to be aware of all communications with the jury, including any written jury instructions that are taken into the jury room for deliberations. Although those written instructions may only repeat earlier oral instructions, a defendant nevertheless must be allowed to inspect the written instructions to discover any omissions or discrepancies. Because he was not allowed to inspect the written instructions taken into the jury room, Schiebel was effectively denied this right.

Although we recognize that Schiebel had a right to inspect written

jury instructions given to the jury, we nevertheless find that no reversible error occurred when he was denied that right. The defendants' chief contention is that the supplemental oral instructions on good faith, the duty to disclose, and the authority of savings and loans to invest, were omitted from the written instructions. However, this contention is defeated by the trial court's order correcting the record, upheld in this court, which order found that those instructions were reduced to writing and given to the jury. We find no prejudice from the inability of defendants to inspect the written instructions and therefore overrule Schiebel's ninth proposition of law.

## Cross-Appeal

### I

### Change of Venue

In defendant's fifth proposition of law, he challenges the trial court's denial of a motion for change of venue. We have reviewed the voir dire, find his assertions to be without merit, and concur with the disposition of this issue in *State* v. *Warner, supra,* at Part II. Defendant's proposition of law is overruled.

### II

### Special Prosecutor

We have examined Schiebel's constitutional challenge to the General Assembly's enactment of Am. S.B. No. 147 for the appointment of a special prosecutor, and for the reasons articulated in *State* v. *Warner, supra,* at Part I, we find defendant's arguments without merit. Propositions of law eleven and twelve are overruled.

### III

In propositions of law six, seven and eight, Schiebel challenges the following as violations of his right to a fair trial: joinder, pursuant to Crim. R. 8(A), of the charges for violating banking laws and the charges for violation of securities laws; denial of his motion for severance of these offenses; and denial of his motion to be tried separately from codefendants Bongard and Warner.

We agree with the court of appeals that defendant was not prejudiced by these rulings, and for the following reasons overrule defendant's propositions of law six, seven and eight.

### A

### Joinder and Severance of Offenses

Schiebel filed a pretrial motion for severance of the banking counts (counts one to eighty-two), the merger and debenture counts (counts eighty-three to eighty-eight), and the loan counts (counts eighty-nine to ninety-two). The trial court severed the loan counts, but denied severance and separate trials for the banking and securities counts.

The court of appeals affirmed, holding that Crim. R. 8(A) permits the joinder in a single indictment of two or more offenses charged in separate counts if the offenses are "part of a course of criminal conduct."

Crim. R. 8(A) provides:

"Joinder of offenses. Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

It is understood that "[j]oinder of offenses is favored because it conserves resources by avoiding duplication inherent in multiple trials' and minimizes the possibility of in-

congruous results that can occur in successive trials before different juries[,]" *State* v. *Hamblin* (1988), 37 Ohio St. 3d 153, 157-158, 524 N.E. 2d 476, 481, and " '[w]here evidence of each of the joined offenses would be admissible at separate trials, severance is not required because prejudice due to cumulation of evidence or the inference of a criminal disposition is largely absent.' " *State* v. *Benner* (1988), 40 Ohio St. 3d 301, 306, 533 N.E. 2d 701, 708, citing *State* v. *Hamblin, supra*, at 159, 524 N.E. 2d at 481-482.

Crim. R. 14 provides: "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. * * *"

In *State* v. *Torres* (1981), 66 Ohio St. 2d 340, 20 O.O. 3d 313, 421 N.E. 2d 1288, syllabus, this court held that "[a] defendant claiming error in the trial court's refusal to allow separate trials of multiple charges under Crim. R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial." See *Opper* v. *United States* (1954), 348 U.S. 84, 95; *State* v. *Roberts* (1980), 62 Ohio St. 2d 170, 175, 16 O.O. 3d 201, 204, 405 N.E. 2d 247, 251-252.

Defendant asserts that in *Hamblin* this court upheld joinder of offenses pursuant to Crim. R. 8(A) because the two offenses were part of a continuing "course of conduct" and entailed "interlocking evidence" which "linked" the defendant to both sets of offenses which were close in location and time. He alleges that these two elements are absent in this case; that the evidence which was common to the banking law violations and securities law violations did not "interlock" so as to link Schiebel to those separate sets of offenses but was merely repetitive; and that the volume and complexity of the evidence on these counts, when considered in a single trial, confused the jury so that it could not segregate the evidence as to each offense. We disagree.

The court of appeals' opinion summarizes the nature of the counts and evidence as follows:

"* * * Counts one through eighty-two charged Schiebel with misapplication of funds and unauthorized acts in connection with wire transfers of Home State's funds to meet margin calls on the association's repurchase agreements with ESM. Counts eighty-three through eighty-six charged Schiebel with making false or fraudulent representations in connection with the merger and the sale of debentures by, *inter alia,* understating the degree of involvement and dependence between Home State and ESM and failing to disclose negative ODSL directives and comments. Count eighty-seven charged Schiebel with selling debentures with knowledge of Home State's insolvency, and count eighty-eight charged Schiebel with misapplication of funds in connection with the merger of Home State and Home State Financial.

"Count eighty-seven, which is founded upon the debenture sale, and count eighty-eight, which is founded upon the merger, clearly may be joined in a charging instrument with counts eighty-three through eighty-six, which charge violations of the securities laws

based on both events. Schiebel contends, however, that the remaining banking and securities counts were improperly joined when the payments on margin calls and the debenture sale were temporally separate acts and were not part of a course of criminal conduct.

"Payments of Home State funds to ESM to meet margin calls, as charged in the banking counts, allegedly led to excessive overcollateralization of Home State's repurchase agreements with ESM. The degree of involvement and dependence between Home State and ESM was a direct function of the association's excessive overcollateralization of its repurchase agreements with ESM, and overcollateralization of the repurchase agreements was the principal subject of ODSL comments and directives. Nondisclosure of the extent of Home State's involvement with ESM and of ODSL comments and directives formed, in part, the fundament for the securities law violations charged in counts eighty-three through eighty-six. Thus, despite the temporal separation between the payments on margin calls and the debenture sale, evidence relevant to the banking counts was inextricably intertwined with evidence relevant to the securities counts. * * *"

Although we disagree with any characterization of this case as one of nondisclosure rather than, as we find, one of affirmative misrepresentation, we nevertheless agree with the court of appeals' conclusions that the evidence for the banking and securities counts were inextricably intertwined and that the trial court did not err in joining or refusing to sever those counts. Judicial economy would not have been served by trying the causes separately.

Furthermore, defendant's claim that the jury was incapable of segregating the voluminous and complex evidence is clearly rebutted by the verdict of acquittal on all of the banking charges. *United States* v. *Castro* (C.A.9, 1989), 887 F. 2d 988, 998.

## B

### Separate Trials

Defendant contends that there is no rational basis for joinder of Schiebel's trial on the banking and securities counts with the trial of the "touted principals" in the banking transactions, who were the subject of great adverse publicity shortly before trial. He claims that joinder led to a verdict of "guilty by association" on the securities counts.

Crim. R. 8(B) provides: "Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count."

Federal courts, interpreting similar Fed. R. Crim. P. 8, have held that joinder of defendants is proper so long as all defendants participated in the same series of transactions leading to the charges even though not all defendants participated in every act. *United States* v. *Burreson* (C.A.9, 1981), 643 F. 2d 1344, 1347[4]; *United*

---

[4] In *Burreson*, three defendants were charged with various federal offenses, including securities fraud, mail fraud and conspiracy as a result of a series of transactions in a scheme to convert mutual funds. Joinder was held to be appropriate.

*States* v. *DePalma* (S.D.N.Y. 1978), 461 F. Supp. 778, 789.[5] Not all defendants need be charged in each count, *United States* v. *Amick* (C.A.7, 1971), 439 F. 2d 351, 360,[6] nor would differing levels of culpability among defendants necessarily justify severance. *United States* v. *Clark* (C.A.2, 1985), 765 F. 2d 297, 305.

The standard of review is abuse of discretion, since trial courts are given considerable latitude in determining whether a severance is warranted. *United States* v. *Reeves* (C.A.8, 1982), 674 F. 2d 739, 744. The test is "whether a joint trial is so manifestly prejudicial that the trial judge is required to exercise his or her discretion in only one way — by severing the trial. * * * A defendant must show clear, manifest and undue prejudice and violation of a substantive right resulting from failure to sever. * * *" *United States* v. *Castro, supra,* at 996; see, also, *United States* v. *Lane* (1986), 474 U.S. 438, for the proposition that misjoinder is not *per se* reversible error.

We are not persuaded by the reasoning of *United States* v. *Cianciulli* (E.D. Pa. 1979), 476 F. Supp. 845, cited by defendant. In *Cianciulli,* twenty-three defendants were charged with violating federal election laws over a three-year period. The district court determined that the number of defendants named in the indictment would require a jury to sit through weeks of trial dealing with dozens of incidents of criminal misconduct which did not involve many of the defendants. Nevertheless, the court

cautioned that "[a]ny decision to sever *sua sponte* must ultimately be based upon the individual factual circumstances presented in each case and must involve an examination of the factual and legal similarities and dissimilarities evident in the charges brought against each defendant in relation to the overall criminal scheme alleged. * * *" *Id.* at 848.

We have already held that the joinder of offenses was proper. All three defendants were key decision makers of Home State during the entire period of time upon which all eighty-eight counts were based. The allegations in the indictment focused on each man's activities in causing the final collapse of the institution. Severing the trial would not have resulted in judicial economy or simplified the complex evidence which would have been duplicated for each trial. Bongard was convicted of misapplication of funds and unauthorized acts; Schiebel was not. Warner was convicted on some counts of unauthorized acts; Schiebel was not. The fact that Schiebel was convicted on three of the same securities violations as Warner is insufficient to show manifest prejudice to defendant. The proposition of law is overruled.

## IV

### Defendant's Absence

As part of his cross-appeal, Schiebel contends that because neither he nor his counsel was present on Saturday morning, February 21, 1987, when the jury was given the written

---

[5] In *DePalma,* the defendants were charged with securities fraud, bankruptcy fraud, racketeering activity and obstruction of justice. Joinder was permitted.

[6] *Amick* involved eleven defendants

and two corporations convicted of violating the Securities Act of 1933 by fraud through use of the mails. Joinder of the defendants was upheld in spite of the fact that the convictions of certain defendants were set aside.

versions of the supplemental instructions, he was denied his right to be present at all stages of the trial as provided in Crim. R. 43(A). The right to be present pursuant to the rule embodies due process principles of the United States and Ohio Constitutions, and defendant's absence during this portion of the trial is asserted as a violation of his right to a fair trial. See *State v. Williams* (1983), 6 Ohio St. 3d 281, 6 OBR 345, 452 N.E. 2d 1323. This fundamental right is especially important in cases where additional instructions are given to the jury after deliberations are under way. *State v. Grisafulli* (1939), 135 Ohio St. 87, 13 O.O. 440, 19 N.E. 2d 645; see, also, *Sweet v. Clare-Mar Camp, Inc.* (1987), 38 Ohio App. 3d 6, 526 N.E. 2d 74. If a defendant is not present when new, different or substantive instructions are given to the jury, he is unable to review the content, and thereby loses his opportunity to object or cure any error. *Fillippon v. Albion Vein Slate Co.* (1919), 250 U.S. 76; *Shields v. United States* (1927), 273 U.S. 583.

In this instance, we conclude that defendant was not prejudiced by his absence on Saturday morning. The instructions given on Saturday morning had already been given to the jury in the presence of both defendant and counsel on Friday afternoon. The content of three of the four instructions was based on specific requests of the defendants. There was no objection to the content of those oral instructions after they were given on Friday afternoon. See *State v. Blackwell* (1984), 16 Ohio App. 3d 100, 16 OBR 106, 474 N.E. 2d 671. The only question remaining is whether the substance of the additional written instructions given in the absence of Schiebel and his attorney was prejudicial. See *Rogers v. United States* (1975), 422 U.S. 35.

R.C. 2945.10(G) provides that if written instructions are given to the jury, "[s]uch charge * * * or instruction * * * shall not be orally qualified, modified, or explained to the jury by the court. * * *" The four supplemental instructions given orally on Friday afternoon related to (1) the authority of a savings and loan to invest, (2) motive, (3) good faith, and (4) duty to disclose. The question is whether there was a substantial difference between the instructions given orally and the ones reduced to writing.

In Part II[D] of this opinion, we found that there was no requirement to give an instruction on the duty to disclose based on the charges for violating R.C. 1707.44(B), (G), or (J). Therefore, if that instruction did not make its way to the jury, no error occurred. If the instruction did go to the jury, it would have benefited the defense and harmed the prosecution.

As to the other three disputed charges, we find no variation between the oral and written instructions on motive[7] and good faith.[8] The written

---

[7] The state's requested instruction No. 21 on motive as given orally was as follows:

"During argument you heard considerable discussion as to the motives and actions of other persons. If they acted improperly, charges could be brought against them. The only persons on trial here are the defendants, and the sole purpose of this proceeding is to determine whether or not the defendants are guilty or not guilty. It is not to determine the guilt or innocence of other persons on other charges. However,

in weighing the testimony, as the Court has told you before, you may consider their motives as going to the weight of their testimony but we're only trying the case of these defendants."

The written instruction submitted by Elleman, attached to his affidavit, reads as follows:

"INSTRUCTION 21

"During argument, you heard considerable discussion as to motives and ac-

instruction on the power to invest[9] contains a variation which is minor in light of all the other instructions given. The charge must be taken as a whole. "A single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." *State* v. *Price* (1979), 60 Ohio St. 2d 136, 14 O.O. 3d 379, 398 N.E. 2d 772, paragraph four of the syllabus, citing *Cupp* v. *Naughten* (1973), 414 U.S. 141; cf. *Francis* v. *Franklin* (1985), 471 U.S. 307; see, generally, *State* v. *Marra* (Conn. 1985), 489 A. 2d 350, 361; *Flamer* v. *State* (Del. 1984), 490 A. 2d 104, 128; *Goodwin* v. *State* (Okla. Crim. App. 1973), 506 P. 2d 571.

In *State* v. *Williams, supra,* defendant raised a constitutional challenge to his conviction based on his absence from trial during a voir dire. This court held: "Errors of constitutional dimension are not *ipso facto* prejudicial. As the United States Supreme Court

---

tions of other persons. If they acted improperly, charges could be brought against them. The only persons on trial here are the defendants and the sole purpose of this proceeding is to determine whether the defendants are guilty or not guilty. It is not to determine guilt or innocence of other persons on other charges. However, in weighing the testimony, as the court has told you before, you may consider their motives as going to the weight of their testimony, but we are only trying the case of these defendants."

[8] The oral instruction on good faith given on Friday afternoon was as follows:

"And if defendant had a good faith belief in the existence of the facts represented, and acted in accordance with the facts as he believed them to do [*sic*], he is not guilty of selling securities fraudulently, as his knowledge is an essential element of that crime."

The written instruction submitted by Elleman, as stated in his affidavit, reads as follows:

### "INSTRUCTION 17

"If the defendant had good faith belief in the existence of the facts represented and acted in accordance with the facts as he believed them to be, he is not guilty of selling securities fraudulently, as knowledge is an essential element of that crime."

[9] The instruction given orally on the power to invest was as follows:

"Under Ohio law a savings and loan association may invest any of its funds in bond or interest bearing obligations of the United States, or for which the faith and credit of the United States are pledged for the payment of principal and interest. Furthermore, savings and loan associations are permitted to invest any of their funds in obligations issued or fully guaranteed as to principal and interest by agencies such as the Government National Mortgage Association.

"In addition, under Ohio law, a savings and loan association may borrow money without limitation, and may pledge and otherwise encumber all of its assets to secure its debt, but that provision does not permit a willful misapplication of funds, nor does it permit an unauthorized use of funds, or a use of funds not authorized by the Board of Directors."

The written version submitted by Elleman in his affidavit is as follows:

### "INSTRUCTION 9

"Under Ohio law, a savings and loan association may invest any of its funds in bonds or interest bearing obligations of the United States, or for which the faith and credit of the United States are pledged for the payment of principal and interest. Furthermore, savings and loan associations are permitted to invest any of their funds in obligations issued or fully guaranteed as to principal and interest by agencies such as the Government National Mortgage Association. However, this section does not permit an unauthorized action not permitted by the Board of Directors nor does it permit a wilful [*sic*] misapplica[tion] of funds[.]"

The last sentence was handwritten by Elleman in what appears to be an attempt to conform his proposed instruction to the one read orally on Friday afternoon.

stated in * * * *Chapman* v. *California* (1967), 386 U.S. 18, 22: '* * * We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.' In order to be deemed nonprejudicial, error of constitutional stature, either state or federal, must be 'harmless beyond a reasonable doubt.' * * * Particularly, as regards a defendant's constitutional right to be present at all stages of his trial, prejudicial error exists only where 'a fair and just hearing * * * [is] thwarted by his absence.' *Snyder* v. *Massachusetts* (1934), 291 U.S. 97, 108. * * *" *Williams, supra,* at 286, 6 OBR at 349, 452 N.E. 2d at 1330.

Disposition of this issue does not rest upon whether defendant waived his presence on Saturday morning. We find the record inadequate to support a finding that Schiebel and his counsel voluntarily absented themselves from the Saturday morning proceedings.

We nevertheless conclude that Schiebel's absence when the supplemental instructions were delivered was harmless beyond a reasonable doubt. The substance of the instructions had been agreed to and given orally in his presence on Friday afternoon. Although the manner of their delivery was inappropriate, we do not believe his presence or absence would have changed the outcome of the verdict given the substantial amount of evidence in support of conviction.

The proposition of law is overruled.

## V

### Presumptions Under R.C. 1707.29

In proposition of law ten, Schiebel alleges that the trial court improperly instructed the jury that under R.C. 1707.29 defendant could be presumed to have knowledge of certain facts, and that this presumption of knowledge relieved the state of its burden of proof on an essential element of the charges under R.C. 1707.44. We resolve this matter as to both defendants in *State* v. *Warner, supra,* at Part V, and find defendant's claim of error here to be without merit for the same reasons.

### Conclusion

For the reasons stated in this opinion, the judgment of the court of appeals is reversed in case Nos. 89-583 and 90-85, and we reinstate defendant's conviction on counts eighty-three, eighty-five and eighty-six for violation of the securities laws of Ohio.[10]

*Judgment reversed.*

---

[10] After the court of appeals reversed the conviction, it vacated the $25,000 costs of prosecution assessed against Schiebel and remanded for further proceedings on this issue. The court found that the award was based on a "statement of costs" submitted by the prosecution which was not certified by the clerk of the court of common pleas pursuant to R.C. 2949.14. Because the state has not appealed this judgment ordering a remand on the issue of costs, we will not address the merits of whether R.C. 2949.14 requires certification of the bill of costs before the trial court's order becomes valid. Nevertheless, because we reinstate defendant's conviction, we note that on remand to the trial court, the prosecution may resubmit its statement of costs.

J.V. CORRIGAN, HOLMES, NAHRA, WRIGHT, H. BROWN and McCORMAC, JJ., concur.

JOHN V. CORRIGAN, J., of the Eighth Appellate District, sitting for SWEENEY, J.

JOSEPH J. NAHRA, J., of the Eighth Appellate District, sitting for DOUGLAS, J.

JOHN W. McCORMAC, J., of the Tenth Appellate District, sitting for RESNICK, J.