[Cite as *State v. Durden*, 2012-Ohio-1194.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 96963

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## ANTONIO DURDEN

DEFENDANT-APPELLEE

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-545831

**BEFORE:**   Kilbane, J., Celebrezze, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:**   March 22, 2012

**ATTORNEYS FOR APPELLANT**

William D. Mason
Cuyahoga County Prosecutor
Melissa Riley
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


**ATTORNEY FOR APPELLEE**

Donald Butler
75 Public Square
Suite 600
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Plaintiff-appellant, the state of Ohio ("State") appeals the trial court's judgment granting defendant-appellee's, Antonio Durden ("Durden"), motion to suppress. Finding no merit to the appeal, we affirm.

{¶2} In January 2011, Durden was charged with having a weapon while under disability, which carried a weapon forfeiture specification. Durden moved to suppress a shotgun and prison release card obtained by Cleveland police officers, arguing that the police conducted a warrantless search of his apartment and the police failed to obtain his voluntary consent before searching his home. The State opposed, arguing that Durden voluntarily consented to the search of his apartment. The trial court held a hearing on the motion, at which the following evidence was adduced.

{¶3} In the early morning hours of December 28, 2010, Cleveland police officers, Patrick Becka ("Becka") and Marie Buettner ("Buettner"), responded to a radio dispatch in connection with an aggravated robbery that occurred in the area of Madison Avenue and West 92nd Street in Cleveland, Ohio. The officers spoke with the victim, who stated that two females and a male robbed him at gunpoint. As they toured the area, the officers observed two females, matching the description given to them, enter an apartment on the third floor of an apartment building. The two females then exited the apartment approximately forty seconds later. The officers spoke with the suspects, who

said they went into the apartment looking for "Sam." One of the suspects stated to the other suspect, "I told you it was a bad idea."

{¶4} Both suspects were taken into custody at that time, and the officers went to the apartment looking for Sam. When Becka knocked on the door, Durden answered. Becka asked him if there was anyone in the apartment named Sam, to which Durden replied "no." Becka testified that Durden matched the description of the male robber and seemed scared so Becka handcuffed Durden. Becka and Buettner escorted Durden back to the zone car to interview him further. The officers again asked Durden if he knew someone named Sam or if Sam was in his apartment. Durden replied, "no." Becka then said, "[i]f he's not up there, do you mind if we go look?" Becka testified that Durden replied, "[s]omething to the effect of, '[t]here's no Sam up there. Go ahead.'"

{¶5} Becka and Buettner then went to Durden's apartment searching for Sam. They did not find anyone in the apartment, but found a shotgun sticking out from between a mattress and box spring. As they were leaving the apartment, they observed, in plain sight, Durden's prison release card. At that point, the officers went back to their police cruiser. They asked Durden about the shotgun and ammunition and confirmed that Durden was a convicted felon. The officers then placed Durden under arrest.

{¶6} Durden testified in his own defense. He testified that the Becka and Buettner knocked on his door and asked him about a robbery suspect. Becka instructed Durden to exit his apartment. Becka handcuffed Durden and was escorting him back to

the zone car. As they were walking, Durden advised the officers that he did not want anyone in his apartment without him being present. When they were outside, Becka asked Durden for permission to search his apartment. Durden responded, "[o]nly if I'm present." Durden testified that Becka then snatched Durden's keys out of his hands and proceeded to search his apartment. Durden further testified that he never gave Becka permission to search his apartment, without him being present.

{¶7} After the hearing, the trial court granted the motion to suppress. It is from this order the State appeals, raising the following single assignment of error for review.

ASSIGNMENT OF ERROR

The trial court erred in granting [Durden's] motion to suppress the evidence in this case as the search was conducted consistent with his freely and voluntarily obtained consent.

{¶8} In reviewing a trial court's ruling on a motion to suppress, the reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions for the trier of fact. *State v. DePew*, 38 Ohio St.3d 275, 277, 528 N.E.2d 542 (1988); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. *See State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (1994), citing *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990). The reviewing court, however, must decide de novo whether, as a matter of law, the facts meet the appropriate legal standard. *Id.*; *see also State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906.

{¶9} The State argues that under the totality of the circumstances, Durden's consent was voluntary making the search valid. Durden, on the other hand, argues that the State failed to demonstrate that Durden's consent was voluntary. We find Durden's argument more persuasive.

{¶10} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them, per se, unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One exception is a search conducted pursuant to voluntary consent. *Davis v. United States*, 328 U.S. 582, 593-594, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946). In *State v. Robinette*, 80 Ohio St.3d 234, 241, 1997-Ohio-343, 685 N.E.2d 762, the Ohio Supreme Court, relying on *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) and *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), adopted a totality-of the-circumstances test to determine whether consent is voluntary. *Id.*, at paragraphs two and three of the syllabus.

{¶11} Under this test,

'the Fourth and Fourteenth Amendments require that [the State] demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.' *Robinette* at 242-243, quoting *Bustamonte*.

{¶12} The *Robinette* court further explained that: "'the State has the burden of proving that the necessary consent was obtained and that it *was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority.*'" (Emphasis sic.) *Id.* at 243, quoting *Royer*.

{¶13} In the instant case, the State maintains that Durden voluntarily consented to the search of his apartment when he was handcuffed and detained in the police car. Durden's testimony, however, indicates otherwise. Durden testified that he explicitly told the officers two times that he did not want anyone in his apartment absent his presence. Becka took Durden out of his apartment, handcuffed him, escorted Durden down three flights of stairs, and secured him in a police car. Becka then returned to Durden's apartment with Durden's keys and searched the apartment. The officers did not have Durden complete a consent-to-search form, and the police did not obtain a search warrant prior to searching Durden's apartment.

{¶14} The trial judge was in the best position to resolve issues of fact and witness credibility and believed Durden's testimony. As the reviewing court, we are bound to accept those findings of fact if supported by competent, credible evidence. *See Curry*, 95 Ohio App.3d at 96, 641 N.E.2d 1172, citing *Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54. Here, the trial court determined that the officers did not receive Durden's consent before the search. Based on the State's evidence, Becka allegedly obtained Durden's consent while Durden was handcuffed and placed in the back of a police car. These circumstances, coupled with Durden's explicit testimony that he did not give Becka

permission to search his apartment without his presence, demonstrate that the police did not obtain Durden's voluntary consent prior to the search of his apartment. Thus, we conclude that the trial court's determination is supported by credible evidence.

**{¶15}** Accordingly, the trial court properly granted Durden's motion to suppress.

**{¶16}** The sole assignment of error is overruled.

**{¶17}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR