DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from an Athens County Common Pleas Court, Juvenile Division, judgment that awarded Athens County Children Services (ACCS) permanent custody of Corey Brown, born April 11, 1995, Courtney Brown, born September 7, 1996, Kyle Brown, born February 24, 1999, and Ethan Brown, born January 5, 2001.
 {¶ 2} Appellant David Brown, the natural father of the children, raises the following assignments of error for review and determination:
FIRST ASSIGNMENT OF ERROR:
"THE AWARD OF PERMANENT CUSTODY TO THE ATHENS COUNTY CHILDREN SERVICES AGENCY WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
SECOND ASSIGNMENT OF ERROR:
"THE TRIAL COURT IMPROPERLY ADMITTED HEARSAY EVIDENCE, AND IT IMPROPERLY BASED ITS DECISION TO GRANT PERMANENT CUSTODY ON THIS EVIDENCE."
 {¶ 3} On January 22, 2003, ACCS filed a complaint and alleged that the children are neglected and dependent. On March 4, 2003, the trial court adjudicated the children dependent and awarded ACCS temporary custody.
 {¶ 4} ACCS unsuccessfully attempted to reunite the children with appellant and their mother. The children's parents have a history of domestic violence that they do not hide from the children. The children are afraid of appellant and the court issued an order to prohibit appellant from having contact with the children or their mother. Each time the children returned home, ACCS eventually had to again seek their custody. Thus, since January of 2003, the children have been in ACCS's temporary custody three times. On June 30, 2005, ACCS filed a request for permanent custody.
 {¶ 5} On August 26, 2005, the guardian ad litem filed her report. In it, she related that ACCS removed the children from the home after attempting reunification due to domestic violence, physical abuse, emotional abuse, alcohol abuse, and failure to comply with the case plan. She opined that the Brown home is unsafe for the children due to alcohol abuse, domestic violence, physical abuse and verbal abuse. The children have witnessed appellant assault their mother and have stated that the mother "was as mean as dad when she was drinking." She stated that "[t]he children have intense behavioral and anger problems as a result of being exposed to repeated acts of violence; some of the behaviors have abated since they have been in foster care, but all foster parents report the children still have anger issues."
 {¶ 6} At the permanent custody hearing, ACCS questioned the mother regarding her counseling. She objected and argued that communications between her and her counselor are privileged. The court did not permit ACCS to delve into certain areas, such as childhood events. The court stated that the relevant questions are whether she attended counseling and if she progressed.
 {¶ 7} When ACCS asked the mother whether she abused cocaine, she stated, "I've used it a couple of times but I never abused it." The following colloquy then occurred:
"Q. There was a time when you used cocaine almost daily for a three or four month period isn't there?
A. No, not everyday. It was years ago.
Q. That was in the year 2003 wasn't it.?
A. Years ago.
Q. Pardon me?
A. Yes. Years ago.
Q. The year 2003?
A. Yes.
Q. And you say you didn't use it daily but you used it quite frequently almost daily for a three or four month period in 2003 didn't you? A. Some. I don't recall it's been too long."
 {¶ 8} The mother's former neighbor testified that he witnessed one of the children, clothed in diapers, walking around the apartment complex and almost reach the state highway. He stated that the mother would sit and drink alcohol while the children ran around and that she did not supervise them properly.
 {¶ 9} On December 29, 2005, the trial court awarded ACCS permanent custody. The court did not allow ACCS to introduce the mother's records from her counseling sessions "because [they] contain confidential communications that exceed the intended scope of the written releases."
 {¶ 10} The court determined that permanent custody serves the children's best interests. The court considered the children's interactions and interrelationships:
"All of these children have suffered as a result of a home life with their parents that regularly included domestic violence, abuse, and substance abuse. With good reason, they all fear their father. Melissa, the mother, also fears David, the father, again, with good reason. Mother and father have a history of separating and divorce proceedings. Mrs. Brown's heart may be in the right place, but she has been wholly unsuccessful in regaining appropriate parental control of these children. The children have modeled and demonstrated their father's anger and violent behaviors. All relationships are strained.
By contrast, when outside the home the boys have a reasonable relationship with each other. However, the boys are mean to their sister beyond any acceptable level. The children have established appropriate relationships with their respective foster families and are benefitting from the counseling which they now receive regularly. It may be necessary to place the children separately for adoption.
While it is not necessary for the court to state reasons why these children cannot and should not be reunited with a parent in the future, it is important to point out the lack of genuine commitment demonstrated by the parents. At the very time that this case was approaching hearing on the critical motion to modify disposition to permanent custody, mother `met' a man through the internet and moved to Hamilton, Ohio, some three hours from Athens County. In an effort to justify this decision she explained that the move was based upon better employment opportunities. At the time of the last hearing in this matter, mother had held three different jobs in Hamilton, including motel housekeeper and convenience store clerk, the highest paying of which paid eight dollars an hour. Additionally, this move made impossible any regular consistent visitation and was obviously inconsistent with any realistic plan for reunification.
Father moved in with a family (husband, wife, son and daughter) and is the new `boyfriend' of the family's daughter, age nineteen."
 {¶ 11} The court next considered the children's wishes:
"Because of their mental issues and immaturity, little weight should be place[d] on the wishes of the children. Their statements in this regard have varied. They love their mother and fear their father. They are very confused and often evidence anger."
 {¶ 12} Regarding the children's custodial history, the court stated:
"All the children have lived in agency care for twelve or more months of a consecutive twenty-two month period. Multiple strategic efforts to reunite the family have failed. Prior to this court's involvement (which commenced in January 2003), the parties were already in divorce court. Prior to that, the children lived primarily with their mother and father.
Mother admits to using cocaine `almost daily' for a two to three month period in 2003 even though ACCS * * * had just receive temporary custody of her children and she was subject to the requirements of a case plan.
Using March 4, 2003, (the date of adjudication of dependency) as a start date and January 3, 2005, as the end date, the children have been in agency custody and care as follows:
All four children were in agency foster care the months of March, April, May, June, November and December of 2003 and January, March, April, May and June of 2004, at which time Courtney returned to mother's home. Cory remained in care during July and August of 2004; Kyle during July, August, and most of September 2004; and Ethan during July, August, September, and most of October 2004. After all four had been reunited with their mother it again became necessary to remove them in May of 2005. They have been in foster care since then."
The court then considered the children's need for a legally secure permanent placement and whether it could be achieved without a grant of permanent custody:
"Permanent custody is the only reasonable option that will give these troubled children an opportunity for a legally secure placement, which they need and deserve. While mother has fought valiantly to extract herself from an abusive and dependent relationship with her husband, she has been unable to establish or maintain a home suitable to raise these children. Furthermore, the children have their own mental health and behavioral issues that make their care and development very challenging. Neither parent has ever adequately addressed these issues."
The court additionally found that the children have been in ACCS's temporary custody for twelve or more months of a consecutive twenty-two month period and that ACCS used reasonable efforts. This appeal followed.
 I {¶ 13} In his first assignment of error, appellant asserts that evidence does not support the trial court's decision to award ACCS permanent custody. He contends that the trial court relied solely upon the parents' diminished economic resources and the time that the children were placed in foster care.
 {¶ 14} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children.Santosky v. Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388,71 L.Ed.2d 599; In re Murray (1990), 52 Ohio St.3d 155, 156,556 N.E.2d 1169. The parent's rights, however, are not absolute. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed."" In reCunningham (1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034
(quoting In re R.J.C. (Fla.App. 1974), 300 So.2d 54, 58). Thus, the state may terminate parental rights when the child's best interest demands it.
 {¶ 15} R.C. 2151.413 permits a public children services agency that has temporary custody of a child to file a motion requesting permanent custody of the child. In considering a motion filed pursuant to R.C. 2151.413, the trial court must follow the guidelines set forth in R.C. 2151.414.
 {¶ 16} R.C. 2151.414(A)(1) requires a trial court to hold a hearing regarding the motion for permanent custody. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. See R.C. 2151.414(A)(1)
 {¶ 17} When considering a permanent custody request, a trial court should consider the underlying principles of R.C. Chapter 2151:
To provide for the care, protection, and mental and physical development of children * * *;
* * *
To achieve the foregoing purpose, whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety. R.C. 2151.01.
 {¶ 18} Also, clear and convincing evidence must exist to support a permanent custody award. The Ohio Supreme Court defined "clear and convincing evidence" as follows:
"The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."
In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04,495 N.E.2d 23; see, also, State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54. In reviewing whether a trial court's decision is based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, 55 Ohio St.3d at 74. If a trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. Id. Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273: "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
 {¶ 19} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that one of the following conditions applies:
(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 20} Pursuant R.C. 2151.414(B)(1)(d), when a child has been in a children services agency's temporary custody for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time. See, e.g., In re Billingsley, Putnam App. Nos. 12-02-07 and 12-02-08, 2003-Ohio-344; In re Williams, Franklin App. No. 02AP-924, 2002-Ohio-7205; In re Dyal (Aug. 9, 2001), Hocking App. No. 01CA11. Thus, when considering a permanent custody motion brought pursuant to R.C. 2151.414(B)(1)(d), the only other consideration becomes the best interests of the child. A trial court need not conduct an R.C. 2151.414(B)(1)(a) analysis of whether the child cannot or should not be placed with either parent within a reasonable time. Dyal; see, also, In reBerkley, Pickaway App. Nos. 04CA12, 04CA13, and 04CA14,2004-Ohio-4797, at ¶ 61.
 {¶ 21} R.C. 2151.414(D) requires a trial court to consider specific factors in determining whether a child's best interests would be served by granting a motion for permanent custody. The factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C.2151.414(E)(7) to (11) apply.
 {¶ 22} In the case at bar, we believe that the record contains competent, credible evidence to support the trial court's judgment. While appellant argues that he and the mother have made progress and are capable of caring for the children, this is not the standard that the trial court applied. Instead, as we noted above, once the evidence establishes that the children have been in ACCS's temporary custody for twelve or more months of a twenty-two month period, the only other concern is the children's best interests. The parents' conduct may, however, be relevant insofar as it affects the children's best interests.
 {¶ 23} In the case sub judice, our review of the record reveals that the children have been in ACCS's temporary custody for twelve or more months of a twenty-two month period. Furthermore, we believe that the record supports the trial court's best interests determinations. The children do not interact well when together. Appellant is not permitted to have contact with them, and their mother has not been able to consistently provide them with appropriate care or an appropriate home. The children are afraid of appellant. One of the children stated that he wanted to live with the foster family, while the others, the court found, lack the maturity to adequately relay their wishes. The children have been in foster care three times over a two and one-half year period. As the trial court determined, they deserve a stable environment. Furthermore, because the parents have been unable to maintain custody of the children after attempts at reunification, further reunification efforts would not likely be successful. Children need a stable and secure environment and neither parent has demonstrated the ability to provide such an environment.
 {¶ 24} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.
 II {¶ 25} In his second assignment of error, appellant asserts that the trial court (1) improperly relied upon the mother's admission of "almost daily" cocaine use when she denied the allegation, and (2) erred by admitting the former ACCS's caseworker's notes because the notes "are filled with hearsay."
 {¶ 26} First, we disagree with appellant that the trial court improperly relied upon the mother's admission of "almost daily" cocaine use. Contrary to his assertion, however, the mother did not deny the allegation. She admitted that she used cocaine "almost daily," but that it was "years ago" (2003), and that she did not "abuse" the drug.
 {¶ 27} Second, we disagree with appellant that the trial court improperly admitted the caseworker's notes because they contain hearsay. Generally, the admission of relevant evidence rests within a trial court's sound discretion. Thus, appellate courts should not disturb trial court decisions to admit or to exclude evidence absent an abuse of discretion. See, e.g., Statev. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus; State v. Reed (1996), 110 Ohio App.3d 749,752, 675 N.E.2d 77. We note that an abuse of discretion is more than an error of judgment; rather, it implies that the trial court acted unreasonably unconscionably, or arbitrarily. See, e.g., State v. Lessin (1993), 67 Ohio St.3d 487, 620 N.E.2d 72;Rock v. Cabral (1993), 67 Ohio St.3d 108, 616 N.E.2d 218. When applying the abuse of discretion standard, we are not free to merely substitute our judgment for that of the trial court. Inre Jane Doe I (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181, citingBerk v. Matthews (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301.
 {¶ 28} "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally inadmissible. Evid.R. 802. "`[H]earsay is not admissible in adversarial juvenile court proceedings at which a parent, charged with neglecting his or her children, may lose the right to custody of his or her children. * * * * [Because] the judge acts as the factfinder and is presumed to be able to disregard hearsay statements, the person against whom the hearsay statements were admitted in such a case must show that the statements were prejudicial or were relied upon by the judge in making his decision.'" In reLucas (1985), 29 Ohio App.3d 165, 172, 504 N.E.2d 472, quoting In re Vickers Children,14 Ohio App.3d at 206, 470 N.E.2d 438, and citing In re Sims (1983),13 Ohio App.3d 37, 468 N.E.2d 111.
 {¶ 29} Evid.R. 803(8) sets forth a public records exception to the hearsay rule:
(8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness.
 {¶ 30} In Westinghouse Electric Corp. v. Dolly MadisonCorp. (1975), 42 Ohio St.2d 122, 130, 326 N.E.2d 651, the court held that the evidence rules allow "the admission of official records, although these records may constitute hearsay, in so far as they consist of facts recorded by public officials who are not present as witnesses. However, the [rule] does not render admissible statements contained in official reports, where such statements are themselves hearsay. * * *." See, also, Evid.R. 805 (stating that hearsay within hearsay is not excluded if each layer is admissible in and of itself).
 {¶ 31} In the case at bar, we believe that the trial court properly admitted the caseworker's notes under Evid.R. 803(8).[1] The notes reflected the caseworkers' observations that she recorded as part of her duty to investigate a neglect, abuse, or dependency complaint. See Lucas (holding that "a compilation of data and reports of the Putnam County Welfare Department of matters observed and recorded pursuant to its duty to administer the laws pertaining to dependent or alleged dependent children" was admissible under the public records exception). To the extent that her notes may have contained hearsay, we note that appellant did not identify which portions of the case notes that, he contends, contain hearsay (the case notes consist of seventy pages). See, generally, Statev. Floyd (Feb. 21, 1992), Scioto App. No. 1992.
 {¶ 32} Moreover, we note that the trial court explicitly recognized the limited admissibility of the caseworker's notes. The court correctly observed that the caseworker's notes "obviously include a lot of things that I probably can't give any weight to because of the nature of the case notes. The caseworkers are trained to write everything they see, hear, think, anything that happened that day * * * * I mean, everything that they do with cthe case is probably contained in here in one fashion or another as such, you know, that the relevance of some of this may be very questionable and the weight questionable as well, but if this is a complete list of the records and she has certified them and she creates and keeps the records then I think it's an admissible document."
 {¶ 33} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error and affirm the court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Abele, J., Kline, J. McFarland, J.: Concur in Judgment 
[1] Although the appellee asserts that the court properly admitted the notes as business records under Evid.R. 803(6), we believe the proper rule is Evid.R. 803(8). Evid.R. 803(6), the "business records" exception, provides:
A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.