[Cite as *In re R.M.*, 2021-Ohio-4378.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : | Hon. Patricia A. Delaney, J. |
| IN RE R.M. | : |  |
|  | : | Case No. 2021CA00085 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
Common Pleas, Juvenile Division, Case
No. 2019-JCV-495

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     December 9, 2021

APPEARANCES:

For SCJFS-Appellee:

BRANDON J. WALTENBAUGH
Stark County JFS
402 – 2nd St. S.E.
Canton, OH 44702

For Mother-Appellant:

DEAN L. GRASE
700 Courtyard Centre
116 Cleveland Ave. N.W.
Canton, OH 44702

*Delaney, J.*

{¶1} Mother-Appellant appeals the July 13, 2021 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, awarding permanent custody of R.M. to Appellee, Stark County Department of Job and Family Services. Father has not appealed the judgment entry of the Stark County Court of Common Pleas, Juvenile Division.

### FACTS AND PROCEDURAL HISTORY

### Temporary Custody

{¶2} On May 3, 2019, Appellee Stark County Department of Job and Family Services ("SCDJFS") filed a Complaint for Neglect and Dependency regarding R.M., born in March 2019. R.M. is the child of K.B., Mother-Appellant, and R.M., Father. SCDJFS became involved with the family when it was informed they had been residing in a homeless shelter since April 12, 2019. The police had been called to the shelter because Father was causing a disturbance due to his intoxication. The family had left the shelter on May 2, 2019 and returned on May 9, 2019. SCDJFS started an investigation and interviewed the parents. Father admitted to cocaine use and Mother stated she had been using methamphetamine since the birth of R.M. Mother had tested positive for methamphetamines, amphetamines, and cocaine while in the shelter. They would not tell SCDJFS where they went when they left the shelter for a week in May. The parents had no housing, limited income, and no supplies for R.M.'s care. The infant appeared thin and not well cared for. Mother and Father voluntarily agreed to place R.M. in respite foster care. SCDJFS filed the complaint because it could not maintain the child in respite foster care without the granting of custody.

{¶3}   On May 31, 2019, the trial court appointed a CASA Guardian ad Litem for R.M.

{¶4} An initial case plan was filed for Mother and Father on June 19, 2019. It required Mother and Father to complete parenting assessments with Lighthouse Family Center and follow all recommendations, secure and maintain stable housing and employment, and complete a drug and alcohol assessment and follow all recommendations. Mother was granted biweekly supervised visitation with R.M.

{¶5} An adjudication hearing was held on August 8, 2019, where R.M. was adjudicated dependent. The disposition hearing was held the same day and R.M. was placed in the temporary custody of SCDJFS. The August 9, 2019 Magistrate's Decision stated Mother and Father were having trouble carrying out their initial case plans. The parents were scheduled for parenting assessments but did not show for the appointment. Father had been arrested and extradited to Alabama for a prior felony charge. When Father was out of state, Mother attended visitation with R.M. regularly but would not participate in her case plan services without Father. She did, however, test negative for drugs and she provided her case worker with a pay stub. The Magistrate's Decision noted R.M.'s health. While in respite foster care, he had gained weight, but he had been diagnosed with other health conditions. He had been fitted for a helmet because his head was flat. There were concerns he was having seizures and trouble with his eyesight, requiring specialist care. SCDJFS was investigating familial placement with Mother's relatives in Missouri or Pennsylvania.

{¶6} On November 13, 2019, the GAL filed a report recommending R.M.'s continued placement with the foster parents. The trial court approved and adopted the case plan on November 19, 2019.

{¶7} On March 12, 2020, SCDJFS filed a motion to extend temporary custody because Mother had been making progress with her case plan. The motion noted that Father stopped all contact with SCDJFS and his whereabouts were unknown. Mother had left Father in December 2019 due to severe domestic violence and was living in protective temporary housing to assist with her domestic violence concerns. She started her parenting assessment in the summer of 2019 and completed a CommQuest drug and alcohol assessment in May 2019. She had provided several clean drug screens. Mother had also begun addressing her mental health concerns with Coleman Behavioral Health.

{¶8} A review hearing was held on April 17, 2020. The GAL filed a report on May 26, 2020, recommending R.M.'s continued placement in the temporary custody of SCDJFS. It was noted that Mother was pregnant, and she gave birth to twins, Z.B. and Z.B., in May 2020. The twins were placed in the temporary custody of SCDJFS on June 4, 2020 and Mother stipulated to their dependency on July 2, 2020. The twins were placed in the same foster home as R.M.

{¶9} On August 3, 2020, the parties stipulated to an extension of temporary custody until November 23, 2020. A review hearing was held on October 16, 2020, where Mother stipulated to the extension of temporary custody to May 23, 2021. On November 24, 2020, the case plan was updated to removed Father from the case plan.

**Permanent Custody Motion and Hearing**

{¶10} The GAL filed his report on April 2, 2021, in which he recommended R.M. be placed in the permanent custody of SCDJFS. On April 23, 2021, the SCDJFS filed its motion for permanent custody of R.M. In the motion, SCDJFS contended R.M. had been in the custody of SCDJFS since August 8, 2019, more than 12 out of the past 22 months, as described in R.C. 2151.414. It also argued that R.M. could not be placed with Mother within a reasonable time.

{¶11} The permanent custody hearing proceeded on July 8, 2021.

{¶12} Chelcea Weigand, SCDJFS caseworker assigned to R.M. and the twins testified at the hearing. The focus of the parents' case plan was to address their substance abuse. Mother made slow progress with her case plan from May 23, 2019 to January 2020 but started making progress with the case plan after her relationship with Father ended. Mother became engaged with CommQuest, utilizing substance abuse and mental health treatment, which she had consistently maintained. Mother had one positive screen for methamphetamines in September 2020, but her subsequent drug screens by CommQuest and SCDJFS were negative.

{¶13} Mother and Father were also to complete a parenting assessment. After Father left, Mother completed her sessions in September 2020. Her parenting evaluation provided diagnostic impressions of major depressive disorder, recurrent other specified personality disorder, poor coping skills, dependent traits, stimulant use disorder, and alcohol use disorder. The parenting assessment recommended comprehensive mental health treatment, substance abuse treatment, and Goodwill parenting classes. Mother completed the Goodwill parenting classes.

{¶14} Mother's other case plan objective was to obtain stable housing and sufficient income. Mother had different jobs over the course of the case, her most recent job for more than two months was as a housekeeper with a local hotel making $10 per hour for 30 to 40 hours per week. At the time of the hearing, she recently obtained permanent housing with a three-year lease. The home had three bedrooms and was appropriate for children.

{¶15} Weigard observed Mother with the three children during her supervised visits. R.M. appeared to be more bonded with Mother than his siblings. Mother loved the children, which was demonstrated during her visits, but Weigard testified that Mother struggled caring for R.M. and then had more difficulty managing the three children at the same time. The three children have significant special needs and developmental delays. R.M. suffered a stroke while in utero, causing brain damage. When he came into SCDJFS's care, it was discovered that his head was flat and required the use of a helmet. It was later discovered through regular brain scans that his head was not growing. R.M. continues to wear the helmet to protect his head from his frequent falls due to gross motor impairment. He wears braces on his legs to assist with standing up and walking. He has vision problems and will need glasses. R.M. requires weekly physical therapy and occupational therapy and continuous monitoring by a neurologist, ophthalmologist, and physiatrist. The twins also have developmental delays and require physical and occupational therapy, neurologic care, and possibly genetic testing. The foster parents took the children to the doctor and physical therapy appointments and Mother attended most of the appointments.

{¶16} During Mother's visitation with the three children, Weigard and an aide would have to intervene because Mother had difficulty monitoring the three mobile children and responding to their special needs. Weingard testified that while Mother had completed the parenting assessment and classes, she would not feel safe leaving the children alone with Mother. While the children would grow and get older, the burden of caring for them would not lessen because of their physical and neurological issues. Mother showed during the visits that she was unable to maintain the heightened level of supervision necessary for the children.

{¶17} R.M. and his siblings have been placed in the same foster homes since infancy. Weigard testified the children appeared bonded with their foster family and they were well taken care of. The foster family took R.M. to his therapies and doctor's appointments. They were doing water therapy with R.M. and it helped him. The foster parents expressed an interest in adopting the children. SCDJFS explored kinship placement, but the out-of-state family members were found non-compliant.

{¶18} Dr. Aimee Thomas with the Lighthouse Family Center testified as to her parenting evaluation of Mother. The major parenting issues for Mother at the time of the evaluation were substance abuse and domestic violence. Dr. Thomas had concerns about Mother's cognitive abilities after the brief intellectual testing showed a full-scale IQ of 85, which is on the cusp of average and below average. During her clinical interview, Mother demonstrated difficulty processing information. Dr. Thomas felt Mother needed additional support and assistance with learning. She recommended the Goodwill parenting classes but did not know whether Mother could improve her ability to parent and process information after she observed Mother's delays. Dr. Thomas was concerned

about Mother's ability to parent three children with special needs, especially when paired with a limited support system to compensate for her identified deficits. Dr. Thomas was also concerned that Mother was considering her adoptive family located in Pennsylvania and Virginia as her support system when Mother herself experienced a traumatic childhood with her adoptive family.

{¶19} The parenting instructor with Goodwill, Kelsey Kiggans testified. Mother completed the 10-week program with perfect attendance. Participants take a pre-test and a post-test to determine their retention of information from the classes. Mother's pre-test was 51% and her post-test was 81%. Kiggans observed 10, two-hour long visitations between Mother and her children and Kiggans said Mother struggled to apply the information to parent the children. Kiggans did not recommend unsupervised visitation because Mother did not demonstrate independent ability to meet the needs of all three children simultaneously in a supervised setting.

{¶20} Mother testified that when she had R.M., she was in an abusive relationship with Father and overwhelmed. When she discovered she was pregnant with twins, she left Father because she did not want the twins to also be taken from her. She stayed in a domestic violence shelter until after the twins were born. At the time of the hearing, Mother had been employed at the hotel for three months. She had obtained her driver's license and purchased a car. She purchased children's items for the home.

{¶21} She last used drugs in August 2020, which was reported in September. Mother said she used drugs at that time because she was upset after learning the twins were going to be placed in foster care. She has since learned to use healthier coping skills during stressful situations.

{¶22} At the time of the hearing, R.M. was two years and four months old. Mother felt it was getting easier taking care of all three children at the same time because they were getting older. She had attended his physical and occupational therapy appointments, but not his neurology appointments. She understood the children's needs as best she could with the information provided to her.

{¶23} The GAL reaffirmed that he recommended permanent custody of R.M. should be awarded to SCDJFS.

## Judgment

{¶24} The trial court issued its Judgment Entry and Findings of Fact and Conclusions of Law on July 13, 2021. It found SCDJFS proved by clear and convincing evidence that R.M. had been in temporary custody for a period greater than 12 of the last 22 months and the child could not be placed with Mother within a reasonable period of time and should not be placed with Mother.

{¶25} The trial court acknowledged Mother's positive growth after she ended her relationship with Father. The trial court determined, however, Mother's completion of her case plan did not remedy the statutory limitations as to custody:

This evidence leads this Court to conclude that given continued instruction,

it is possible that the Mother can remedy all of the parenting problems which

led to the removal of [R.M.] and his siblings with more time. While this is the

basis for the Court's decision to deny the permanent custody request for

siblings Z.B. and Z.B., time is not on the Mother's side in [R.M.]'s case.

Ohio law limits the time for reunification to one year for children placed in

an agency's temporary custody. The law permits two six-month extensions

with proper showing that reunification is possible, the case must "sunset" or terminate at the end of two years. The orders of temporary custody in [R.M.]'s case ended on May 23, 2021 and have only continued during the pendency of this motion. As such, the only viable options before this Court are to immediately reunify [R.M.] with his mother which the Court finds would be unsafe for him or to grant permanent custody.

(Findings of Fact and Conclusions of Law, July 13, 2021).

{¶26} The trial court next found it was in the best interests of R.M. to be placed in the permanent custody of SCDJFS.

{¶27} It is from this judgment that Mother now appeals.

### ASSIGNMENTS OF ERROR

{¶28} Mother raises two Assignments of Error:

{¶29} "I. THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY TO STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES CONSTITUTES AN ABUSE OF DISCRETION.

{¶30} "II. THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY TO STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

### ANALYSIS

### I. and II.

{¶31} Mother argues in her first and second Assignments of Error that the trial court erred when it granted permanent custody of R.M. to the SCDJFS. We consider the Assignments of Error together because they are interrelated.

**Standard of Review**

{¶32} R.C. 2151.414(B)(1) states permanent custody may be granted to a public or private agency if the trial court determines by clear and convincing evidence at a hearing held pursuant to division (A) of R.C. 2151.414, that it is in the best interest of the child and any of the following apply:

(a) The child is not abandoned or orphaned * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶33} R.C. 2151.414(B) provides a two-pronged analysis the trial court is required to apply when ruling on a motion for permanent custody. In practice, the trial court will determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶34} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954); *In re: Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *See also, C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel*, 55 Ohio St.3d at 74.

{¶35} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." *Id.* Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984): The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the

credibility of the proffered testimony. Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *see, also, In re: Christian*, 4th Dist. Athens No. 04CA10, 2004-Ohio-3146; In re: C.W., 2nd Dist. Montgomery No. 20140, 2004-Ohio-2040.

### Twelve Out of Twenty-Two Months

{¶36} The trial court determined that pursuant to R.C. 2151.414(B)(1)(d), R.M. had been in the temporary custody of SCDJFS for twelve months of a consecutive twenty-two-month period. Mother does not dispute this fact. This Court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody. *Matter of O.M.*, 5th Dist. Coshocton No. 20CA0017, 2021-Ohio-1310, 2021 WL 1424200, ¶ 33 citing *In the Matter of A.S., V.S., and Z.S.*, 5th Dist. Delaware No. 13 CAF 050040, 2013-Ohio-4018. Therefore, a finding that grounds existed for permanent custody cannot be against the manifest weight of the evidence. *Matter of L.G.*, 5th Dist. Stark No. 2020-CA-00139, 2021-Ohio-743, ¶ 36.

### Reasonable Period of Time

{¶37} Having determined that R.M. was in SCDJFS temporary custody for over twelve months of a consecutive twenty-two-month period, the trial court was not required to make findings as to a reasonable period of time under R.C. 2151.414(E). Nevertheless, the trial court additionally found R.M. could not be placed with either parent within a

reasonable period of time and should not be placed with the parents. *See, In re DA.J.*, 8th Dist. Cuyahoga No. 110393, 2012-Ohio-3102, ¶ 61.

{¶38} R.C. 2151.414(E) sets out the factors relevant to determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Said section states in pertinent part the following:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental

utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(16) Any other factor the court considers relevant.

{¶39} The record in this case shows that Mother completed her case plan objectives and Mother contends because she successfully completed her case plan, the trial court therefore erred in granting permanent custody to SCDJFS. In this case, Mother's success in completing her case plan is important to the analysis, but there are other considerations, most importantly being time.

{¶40} R.M. was placed in the temporary custody of SCDJFS on August 8, 2019. Mother did not begin working on her case plan objectives until January 2020. As we found above, R.M. has been in the temporary custody of SCDJFS for 12 out of a consecutive 22-months.

{¶41} While Mother completed her case plan objectives and made improvements, both the SCDJFS caseworker and the Goodwill parenting instructor testified that Mother did not demonstrate she was able to care for three young children with special needs at the same time. Mother never progressed beyond supervised visitation with R.M. Dr. Thomas testified that she was concerned about Mother's ability to parent three special needs children without support and that if Mother obtained support, it might come from a family where Mother herself possibly suffered trauma.

{¶42} Mother testified that it would be easier for her to care for the children as they got older. R.C. 2151.414(E)(1) states a child cannot be placed with the parent within a reasonable time if:

Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

The section does not put the burden on the child to grow up to meet the Mother's parenting abilities. It is the burden of the parent to substantially remedy the conditions that caused the child to be placed outside of her home. The evidence demonstrated that Mother, while having completed her case plan, continued to struggle to care for R.M., his younger siblings, and their special needs without intervention.

{¶43} Mother made enormous strides in utilizing agency support to remove herself from an abusive relationship, abstain from drugs, find employment, and secure housing. Those achievements should not be discounted. The successful completion of a case plan, however, is not dispositive on the issue of reunification. *Matter of D.H.*, 5th Dist. Richland

No. 2021 CA 0053, 2021-Ohio-3984, 2021 WL 5184060, ¶ 53 citing *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604. As to R.M., we agree the clear and convincing evidence supported the trial court's conclusion that Mother could not remedy the conditions that caused R.M. to be placed outside of the home within a reasonable time.

**Best Interests**

{¶44} Mother next contends it was not in the best interests of R.M. to be placed in the permanent custody of SCDJFS. R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶45} Both the caseworker and the GAL testified it would be in R.M.'s best interests to be placed in the permanent custody of SCDJFS.

{¶46} The SCDJFS caseworker testified that Mother was bonded with R.M. and R.M. appeared to love Mother. R.M. was also bonded with his foster-to-adopt family, where he lived with his two siblings. At the time of the hearing, R.M. was two years and four months old. He had been with the foster family since he was an infant. R.M. has significant health needs including gross motor impairment, difficulty walking, slow head growth, brain damage due to a stroke, possible seizures, and vision problems. He requires multiple therapeutic interventions, which his foster parents have provided, and Mother has attended. R.M.'s siblings also have significant health needs, requiring similar interventions. There were no family members available to care for R.M.

{¶47} We find the evidence supports the trial court's determination.

{¶48} The first and second Assignments of Error are overruled.

**CONCLUSION**

{¶49} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.