[Cite as *In re R.R.*, 2022-Ohio-3722.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                      |   |                              |
|----------------------|---|------------------------------|
|                      | : | JUDGES:                      |
|                      | : |                              |
|                      | : | Hon. W. Scott Gwin, P.J.     |
|                      | : | Hon. William B. Hoffman, J.  |
|                      | : | Hon. Patricia A. Delaney, J. |
| IN RE R.R.           | : |                              |
|                      | : | Case No. 2022CA0006          |
|                      | : |                              |
|                      | : |                              |
|                      | : |                              |
|                      | : |                              |
|                      | : | O P I N I O N                |

CHARACTER OF PROCEEDING:          Appeal from the Coshocton County
                                  Court of Common Pleas, Juvenile
                                  Division, Case No. 21830067


JUDGMENT:                         AFFIRMED


DATE OF JUDGMENT ENTRY:           October 18, 2022


APPEARANCES:

For CCDJFS-Appellee:                      For Mother-Appellant:

BENJAMIN E. HALL                          FREDERICK A. SEALOVER
Assistant Prosecuting Attorney            P.O. Box 2910
Coshocton County Prosecutor's Office      Zanesville, OH 43702-2910
318 Chestnut Street
Coshocton, OH 43812

*Delaney, J.*

{¶1} Mother-Appellant T.A. appeals the February 8, 2022 judgment entry of the Coshocton County Court of Common Pleas, Juvenile Division granting permanent custody of the minor child R.R. to Coshocton County Department of Job and Family Services-Appellee.

## FACTS AND PROCEDURAL HISTORY

{¶2} Mother-Appellant T.A. and Father D.R. are the biological parents of R.R., (born in September 2011), J.R. (born in October 2015), F.A. (born in March 2019), and Z.A. (born in December 2020). Mother and Father began their relationship in 2011 and are not married.

{¶3} Mother has a prior history with the Muskingum County Department of Job and Family Services. In 2006 and 2008, Muskingum County JFS investigated Mother for mental health concerns, poor living conditions and non-cooperation regarding her two children from a prior relationship, born in 2005 and 2008. The two children were removed from her care and legal custody granted to family members. In 2008 and 2011, the Muskingum County Court of Common Pleas, Juvenile Court ordered Mother to undergo a psychological evaluation regarding her custody of one of the children. The psychologist diagnosed Mother with a personality disorder and a cognitive disorder due to which it was the evaluator's opinion that Mother would not do well if allowed to regain custody of her three-year old child. During the Muskingum County proceedings, Mother demonstrated non-compliance with the case plan, mental health concerns, and threatened violence to the caseworkers and staff.

{¶4} Father has three children from a prior relationship who were removed from his care through civil actions.

**Complaint**

{¶5} On March 20, 2018, Plaintiff-Appellee Coshocton County Department of Job and Family Services ("CCDJFS") received a report of bug infestation when R.R. was observed at school with bed bugs and cockroaches on her body and in her school bags. It was also reported that R.R. at six years old was responsible for the care of her younger sister. CCDJFS attempted to gain entrance into Mother and Father's home to investigate but Parents would not allow them access.

{¶6} On June 4, 2018, CCDJFS filed a complaint seeking protective supervision of R.R. and J.R. CCDJFS obtained a court order to allow them access to the home. The investigator observed the home was cluttered and in disarray. There were boxes stacked to the ceiling, medications laying in reach of the children, dirty dishes, cockroaches, and hole in the bathroom floor. The juvenile court granted protective supervision on June 26, 2018. CCDJFS filed a motion for ex parte temporary custody, which the juvenile court granted, and the children were placed in foster care. There were no kinship placements available for the children. R.R. and J.R. were placed in separate foster homes because R.R. was parentified. She behaved as if she was responsible for J.R.'s care and became aggressive with J.R. or others who tried to care for J.R. On June 28, 2018, the juvenile court held a shelter care hearing and continued the order of temporary custody. A Guardian ad Litem was appointed for the children.

{¶7} After placement in foster care, R.R. was diagnosed by Nationwide Children's Hospital with a genetic disorder called STAT3 Gain of Function disease. The

disease impacts R.R.'s immune system and her ability to heal from injury or illness. R.R. was required to live in a sanitary environment to protect her health.

{¶8} The original case plan for Mother and Father was filed on July 3, 2018 and an amended case plan was filed on August 6, 2018. The amended case plan was necessary because R.R. moved to a different foster care provider. In the case plan, Parents were required to provide safe, clean, and stable housing, complete parenting classes, obtain a parenting assessment and follow recommendations, maintain employment, and attend visitation.

{¶9} CCDJFS dismissed the cases for R.R. and J.R. on September 4, 2018 and filed new complaints on September 5, 2018. The juvenile court held the preliminary, adjudicatory, and dispositional hearings on October 2, 2018 where R.R. and J.R. were adjudicated neglected and dependent children. The children remained in the temporary custody of CCDJFS.

{¶10} F.A. was born in March 2019. Parents tried to evade CCDJFS at the time of F.A.'s birth, but a hospital social worker independently reported the birth and concerns about Mother's behavior. On March 28, 2019, an ex parte order was issued removing F.A. from Parents' care and placing her in the foster home with J.R. F.A. was adjudicated dependent. An amended case plan was filed on April 11, 2019 to add F.A.

{¶11} The first Annual Court Review was held on May 15, 2019. Parents had moved three times and currently resided in Zanesville. At the time of the hearing, Father was incarcerated for failure to pay child support. Mother was maintaining employment. Parents were attending two-hour supervised visits with R.R. and J.R. once a week. Parents had supervised visitation with F.A. for two-hours, three times a week. Parents

completed a parenting assessment with Chrysalis Counseling Center. Father was diagnosed with generalized anxiety disorder and major depressive episode severe. The evaluator assessed that Father accepted no responsibility for his actions and was unwilling or unlikely to implement long-term changes necessary to provide a stable, safe, and nurturing home for the children. Mother was diagnosed with bipolar disorder and borderline personality disorder, requiring intensive individual counseling. Mother was regularly attending counseling. Parents had completed parenting classes. The annual review reported that R.R. and J.R. required extensive dental work – R.R. needed three fillings, one root canal, and seven crowns and J.R. had a cavity in every tooth, except one. The GAL recommended that CCDJFS work towards permanency for the children with their current foster placements or whomever CCDJFS approved.

{¶12} On June 24, 2019, CCDJFS filed a motion to reduce Parents' visitation with the children. Parents opposed the motion. The juvenile court denied the motion on August 6, 2019, finding that while Parents had failed to comply with the supervised visitation guidelines, it was in the best interest of the children and the goal of reunification to maintain visitation.

{¶13} In July 2019, J.R. and F.A. were rehomed in a foster-to-adopt home. F.A. was diagnosed with the STAT3 Gain of Function disease.

{¶14} In October 2019, R.R. was demonstrating behavior that caused concerns for the safety of the foster care provider's children. R.R. was rehomed with a foster provider who could provide more singular attention to R.R. and address her behavioral needs. R.R. was acting out by intentionally clogging a toilet and setting fires in the home. The foster provider reported that she felt R.R. liked her but was not bonded with her. The

foster provider was not a foster-to-adopt home. R.R. wanted to go home to be with her sisters.

{¶15} The second Annual Court Review was heard on March 20, 2020, along with a motion for second six-month extension for J.R. and R.R. and the first six-month extension for F.A. It was determined that Parents had obtained housing in October 2019. The ongoing caseworker had attempted unannounced home visitation accompanied by law enforcement (due to Mother's threats in her previous case), but Father refused access to the home. The GAL visited the home and observed that Mother's brother, a man, and a child also lived in the small home. The home was clean but cluttered. Father and Mother were employed. Of most significance, the ongoing case worker reported that Parents' supervised visitation was not progressing. Mother and Father were not utilizing the skills offered by parenting coaching. The visitation observer witnessed Parents being harsh with the children, especially with R.R. Parents occasionally mocked the children if they cried. They struggled to care for three children with different age-appropriate needs. Father was disengaged from the visitation, either laying on the floor, sleeping, or crocheting while Mother did most of the parenting work. Father was asked to stop crocheting during visitation, but he was observed crocheting under the table during visitation.

{¶16} Following the second Annual Court Review, the COVID 19 pandemic suspended visitation, but resumed in June 2020.

{¶17} A new ongoing caseworker was assigned in December 2020. She noted there had been little improvement in the Parents' visitation with the children as to parenting skills or their reception to parenting coaching.

{¶18} Parents had a fourth child, Z.A. in December 2020. The juvenile court denied removal of the child but placed the child under protective supervision.

{¶19} The ongoing caseworker was able to conduct a home visit. She found the home to be too small for a family of six and smelled of cigarette smoke and animal odors. Mother complained to her that Father did not assist with the home or the care of Z.A.

{¶20} On September 10, 2020, CCDJFS filed a motion for permanent custody of R.R., J.R., and F.A. CCDJFS filed a motion to suspend visitation on November 25, 2020.

**Hearings**

{¶21} The juvenile court first held hearings on the pending motion to suspend visitation on December 22, 2020 and February 9, 2021. After the hearing, the juvenile court suspended Parents' visitation due to the evidence presented and compounded by Parents failure to act appropriately by laying in their bed during a remote hearing appearance.

{¶22} The hearings on the pending motion for permanent custody were held on July 15, 2021, July 16, 2021, and July 22, 2021. At the hearing, while the evidence demonstrated that Parents had completed a portion of their case plan, such as graduating from parenting classes, maintaining employment, and obtaining housing, witnesses testified that Parents had failed to progress in their relationship with the children despite the reasonable efforts of CCDJFS. Multiple witnesses testified that this was the longest case they had where the parents had not progressed from supervised visitation. The ongoing caseworker and visitation supervisor could not recommend unsupervised visitation. Mother had made some effort during visitation, but Father continued to make little to no effort to engage with the children or assist Mother parent the children. In the

two years that Parents had been engaged in visitation with the children, the witnesses did not observe any progression in Parents' parenting skills.

{¶23} The psychological evaluators testified at the hearing as to their reports on Mother and Father. Mother was diagnosed with a personality disorder that could not be resolved with medication but would require intensive, long-term individual counseling. Mother was attending weekly counseling. The evaluators opined that reunification with Parents was unlikely if Parents' psychological conditions were not appropriately addressed.

{¶24} The foster parents to F.A. and J.R. testified that the children were bonded with them and their other children. They were interested in adopting the children. The children wanted to remain with the foster family.

{¶25} The foster parent for R.R. testified that she loved R.R. but she was not sure this was a permanent placement for R.R. R.R. expressed that she wanted to be with her sisters and because of COVID and scheduling, had not had an opportunity to visit with them. The juvenile court conducted an in camera interview with R.R. on July 23, 2021.

{¶26} The GAL recommended the children be placed in the permanent custody of CCDJFS.

{¶27} Mother testified at the hearing that she was meeting the case plan expectations. She was also caring for Z.A., working, and attending counseling.

**Judgment Entry**

{¶28} On February 8, 2022, the juvenile court issued an 11-page, thoroughly analyzed judgment entry awarding permanent custody of R.R., J.R., and F.A. to CCDJFS. The juvenile court found that despite the reasonable efforts of CCDJFS, Mother and

Father had not remedied the issues that caused the children to be removed from their care. R.R., J.R., and F.A. had been in the temporary custody of CCDJFS for 12 out of 22 consecutive months. The juvenile court next found it was not in the best interests of the children to be placed with Mother and Father. Both Parents exhibited cognitive and/or psychological issues that would require intensive, long-term therapy to mitigate. The children had been in the temporary care of CCDJFS for two years and Parents had not progressed in their relationship with the children past supervised visitation. The children were placed in foster homes that were meeting their emotional needs and the specific health needs of R.R. and F.A.

{¶29} It is from this judgment entry that Mother now appeals.

**ASSIGNMENTS OF ERROR**

{¶30} Mother raises three Assignments of Error:

{¶31} "I. THE TRIAL COURT ERRED BY FINDING THAT COSHOCTON COUNTY JOB AND FAMILY SERVICES MADE REASONABLE EFFORTS TO REUNIFY THE MINOR CHILDREN WITH THEIR PARENTS.

{¶32} "II. THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

{¶33} "III. THE TRIAL COURT ERRED BY FINDING THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCED [SIC] PRESENTED."

**ANALYSIS**

**I. and III. Permanent Custody**

{¶34} In her first and third Assignments of Error, Mother contends the juvenile court erred when it granted permanent custody of R.R., J.R., and F.A. to CCDJFS. We consider the two Assignments of Error together because they are interrelated.

**Standard of Review**

{¶35} R.C. 2151.414(B)(1) states permanent custody may be granted to a public or private agency if the trial court determines by clear and convincing evidence at a hearing held pursuant to division (A) of R.C. 2151.414, that it is in the best interest of the child and any of the following apply:

(a) The child is not abandoned or orphaned * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶36} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶37} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶38} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶39} The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954); *In re: Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *see also C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel*, 55 Ohio St.3d at 74.

{¶40} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." *Id*. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984): The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the

parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *see, also, In re: Christian*, 4th Dist. Athens No. 04CA10, 2004-Ohio-3146; *In re: C.W.,* 2nd Dist. Montgomery No. 20140, 2004-Ohio-2040.

## Twelve Out of Twenty-Two Months

{¶41} The juvenile court determined that pursuant to R.C. 2151.414(B)(1)(d), R.R., J.R., and F.A. were in the temporary custody of CCDJFS for twelve months of a consecutive twenty-two-month period. Mother does not dispute this fact. This Court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody. *Matter of O.M.*, 5th Dist. Coshocton No. 20CA0017, 2021-Ohio-1310, 2021 WL 1424200, ¶ 33 citing *In the Matter of A.S., V.S., and Z.S.*, 5th Dist. Delaware No. 13 CAF 050040, 2013-Ohio-4018. Therefore, a finding that grounds existed for permanent custody cannot be against the manifest weight of the evidence. *Matter of L.G.*, 5th Dist. Stark No. 2020-CA-00139, 2021-Ohio-743, ¶ 36.

## Reasonable Efforts

{¶42} In her first Assignment of Error, Mother contends CCDJFS failed to make reasonable efforts to eliminate the continued removal of R.R., J.R., and F.A. from her care. R.C. 2151.419 requires the trial court to determine whether the agency filing the complaint for custody "has made reasonable efforts * * * to eliminate the continued removal of the child from his home, or to make it possible for the child to return home." Subsection (B)(1) mandates the trial court to issue written findings of fact setting forth the reasonable efforts made by the agency, including a brief description of "the relevant

services provided by the agency to the family of the child and why those services did not prevent the removal of the child from his home or enable the child to return home." However, even where a trial court has failed to include in its judgment entry, the findings contemplated by R.C. 2151.419(B)(1) we have found that the ultimate issue is the reasonableness of the Department's efforts and have concluded those efforts may be determined from the record. *In the matter of Kell/Bess Children*, 5th Dist. No. 97CA0278, 1998 WL 401767 (Mar. 23, 1998); *Hunt v. Ickes*, 5th Dist. Tuscarawas No. 2014 AP 08 0032, 2015-Ohio-309, ¶ 19; *In Re: M.M.*, 5th Dist. Stark No. 2021CA00159, 2022-Ohio-1569, ¶ 49.

{¶43} The Supreme Court of Ohio noted the following in *In re C.F.*, 113 Ohio St.3d 73, 78, 862 N.E.2d 816 (2007):

[N]o one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.' R.C. 2151.01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit. For example, R.C. 2151. 412 requires the agency to prepare and maintain a case plan for children in temporary custody with the goal 'to eliminate with all due speed the need for the out-of-home placement so that the child can safely return home.' Under R.C. 2151.413(D)(3)(b), an agency may not file for permanent custody under R.C. 2151. 413(D) - the '12 months out of 22 rule''[i]f

reasonable efforts to return the child to the child's home are required under

section 2151. 419' and the agency has not provided the services required

by the case plan.

*In re E.H.*, 5th Dist. Stark No. 2022CA00007, 2022-Ohio-1682, 2022 WL 1579856, ¶ 91.

{¶44} A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011(12th Dist. 1992). The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. *In re J.D.*, 3rd Dist. Hancock Nos. 5-10-34, 2011-Ohio-1458. The child's health and safety are paramount in determining whether reasonable efforts were made. *In re R.P.*, 5th Dist. Tuscarawas No. 2011-Ohio-5378.

{¶45} In its judgment entry granting permanent custody of R.R., J.R., and F.A. to CCDJFS, the juvenile court noted that CCDJFS had been providing case management services for Mother as outlined in the case plans since June 2018. As part of their case plan, Mother and Father were responsible for providing a safe and clean home environment. A sanitary home environment was especially important for the specialized health needs of R.R. and F.A. Mother and Father would not allow CCDJFS in their home for a period of time. When they were allowed in the home, CCDJFS noted the home was cluttered and smelled of cigarettes and animals. Parents would not permit CCDJFS enter the basement of the home. It was the responsibility of Mother and Father, not CCDJFS, to maintain a safe and sanitary home environment for their children.

{¶46} Most of the testimony in this case was about Parents' challenges during visitation. Ali Bates, council manager for the Coshocton County Family and Children First Council, testified about her work with Parents during their supervised visitation. She testified that she offered parenting coaching to Parents, but they never called. She said Mother and Father were not receptive to her parenting coaching when it was offered during visitation. Mother and Father were offered increased visitations on a different day, but Parents declined, stating that was the day Parents paid bills. The caseworkers noted this was the longest case they had where the parents failed to progress beyond supervised visitation.

{¶47} The juvenile court also noted in its judgment entry that CCDJFS investigated kinship placements, but the potential placements could not pass the home study process or were unwilling to accept placement for the children.

{¶48} In the instant case, we find there is competent and credible evidence to support the juvenile court's determination the efforts of CCDJFS to enable the children to return home were reasonable and diligent under the circumstances of the case.

**Best Interests**

{¶49} In her third Assignment of Error, Mother contends the juvenile court erred when it found it was in the best interest of R.R., J.R., and F.A. to be placed in the permanent custody of CCDJFS.

{¶50} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported

by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶51} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D)(1) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶52} Mother argues the juvenile court did not take into consideration that she had successfully  completed parenting classes, was attending mental health counseling, maintained employment, and had housing.

{¶53} A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re E.H.*, 5th Dist. Stark No. 2022CA00007, 2022-Ohio-1682, 2022 WL 1579856, ¶ 101 quoting *In re Mauzy Children*, 5th Dist. No. 2000CA00244, 2000

WL 1700073 (Nov. 13, 2000), citing *In re Awkal*, 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

{¶54} In this case, we find there was competent, credible evidence to support the juvenile court's decision that it was in the best interest of R.R., J.R., and F.A. to be placed in the permanent custody of CCDJFS. Multiple witnesses testified this was the longest case they had where the parents had not progressed from supervised visitation. The ongoing caseworker and visitation supervisor could not recommend unsupervised visitation. In the two years that Parents had been engaged in visitation with the children, the witnesses did not observe any progression in Parents' parenting skills. The GAL recommended that permanent custody was in the best interest of the children.

{¶55} The juvenile court conducted an in camera interview with R.R., but that interview was not provided to this Court on appeal. There was evidence R.R. expressed that she wished to be reunified with her family. Upon investigation, it appeared that R.R. wished to be reunified with her sisters, which unfortunately was not in R.R.'s best interests due to her parentification. The children's current foster placements were meeting their specialized health and emotional needs.

{¶56} For these reasons, we find that the juvenile court's determination that Mother had failed to remedy the issues that caused the initial removal and therefore R.R., J.R., and F.A. could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find that the juvenile court's decision that permanent custody to CCDJFS was in the child's best interest was based

upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶57} Mother's first and third Assignments of Error are overruled.

## II. Ineffective Assistance of Counsel

{¶58} In her second Assignment of Error, Mother contends she received the ineffective assistance of counsel for counsel's failure to request a parenting and/or psychological assessment. We disagree.

{¶59} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶60} In support of its case, CCDJFS relied upon Mother's psychological and parenting evaluation completed in 2008 and 2011. Mother contends her trial counsel was ineffective for counsel's failure to request a timelier psychological evaluation.

{¶61} Dr. Gary Wolfgang conducted the 2011 psychological evaluation of Mother. He testified at the hearing that his evaluation was based in part on his 2008 psychological evaluation of Mother. During cross-examination, Mother's counsel asked Dr. Wolfgang:

Q. And I think you addressed this at the beginning of your testimony, that your report was 10 years ago. Would you ever treat someone on the basis of a 10-year-old-report?

A. No, I wouldn't. * * * I had – I would have recommended, had I been consulted, that I have at least some opportunity to reinterview the person to see if the conclusions from the earlier report were still valid.

(T. 300).

{¶62} CCDJFS also introduced Mother's parenting assessment completed on March 29, 2019 by Barbara Schwartz LPCC-S with the Chrysalis Counseling Center, Inc. (JFS Exhibit 13). Barbara Schwartz testified at the hearing and was subject to cross-examination.

{¶63} Finally, Wendy King, Mother's mental health provider testified at the hearing on Mother's behalf. She spoke as to Mother's psychological diagnosis and the mental health treatment Mother was currently receiving. (T. 446).

{¶64} In this case, we find Mother's trial counsel appropriately provided evidentiary support for Mother's mental health status through cross-examination of Dr. Wolfgang and the direct examination of Wendy King. Further, CCDJFS provided a 2019 parenting assessment of Mother, based on which Mother's trial counsel cross-examined the evaluator, Barbara Schwartz.

{¶65} Mother's trial counsel did not fall below the objective standard of reasonable representation when counsel did not request a psychological assessment.

{¶66} Mother's second Assignment of Error is overruled.

## CONCLUSION

{¶67} The judgment of the Coshocton County Court of Common Pleas, Juvenile Division, is affirmed.

By:  Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.